CASE 19—PETITION EQUITY—MARCH 15.

# Fishback v. Green, &c.

# Fishback, &c., v. Green.

APPEALS FROM GRANT CIRCUIT COURT.

87   107
103  720

87   107
104   45

87   107
d106  109

87   107
e112  860

87   107
134   309

87   107
138   692

1. JURISDICTION TO SELL LAND.—In an action to settle an insolvent estate the court may decree a sale of land situated in another county than that in which the action is pending.

2. JUDICIAL SALES—STATUTE OF FRAUDS.—Where one purchases land at a judicial sale under an agreement with the owner to allow him to redeem, the agreement is enforceable, although not in writing. The purchaser holds the land in trust for the former owner, and, therefore, the statute of frauds presents no obstacle to a recovery.

3. SAME—REDEMPTION.—Even though such an agreement limited the time in which the owner should be allowed to redeem, he will be allowed to redeem after the expiration of that time, time not being material, but he will be required to repay the purchaser not only the purchase money with interest but all cost he may have incurred.

4. REVIVOR.—The fact that one had not been appointed administrator at the time a petition of revivor was filed in his name as such is immaterial, as he was afterwards appointed and qualified as administrator, and the defendant thereafter entered his appearance to the petition, which had remained on file.

J. J. LANDRUM & H. CLAY WHITE FOR APPELLANT.

1. In a proceeding to distribute a debtor's estate on the ground of insolvency, the court has no jurisdiction, on the cross-petition of a creditor living in another county, to enforce a mortgage lien to decree the

sale of land lying in that other county. (Civil Code, sections 62, 65, 66, 70; Webb v. Wright, 1 Bush, 107.)

2. On the death of the plaintiff in an action an order of revivor must be served upon the defendant as a summons is directed to be served, or judgment subsequently rendered will be void. (Amyx v. Smith's Administrator, 1 Met., 529; 79 Ky., 593; Civil Code, sections 501, 502.)

WM. LINDSAY FOR APPELLEE.

An act of insolvency operates to transfer all the property of the debtor for the benefit of his creditors, and a creditor having a mortgage upon land of the debtor lying in another county may intervene to enforce his mortgage lien. (General Statutes, chapter 44, article 2, section 3; Civil Code, sections 62, 65.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

A creditor of J. H. Fishback, by an action in proper form in the Grant Circuit Court, sought to have certain acts and transfers of the debtor declared to operate as an assignment of all his estate for the benefit of his creditors, under section 1, article 2, chapter 44, of the General Statutes, commonly known as the act of 1856. The effort was successful. A creditor holding a lien upon a tract of land in Kenton county was made a defendant. He asserted it by proper pleading, and among other relief afforded in the action, this land was ordered to be sold, less, however, a homestead of thirty acres, which was set apart to the debtor, but by the judgment was not exempted as to the lien debt in case the balance of the land failed to pay it. After the rendition of this judgment, but before the sale of the land, the lien creditor died. On December 22, 1880, an order was entered, reciting that a certain person as his administrator filed a petition of revivor, and that J. H. Fishback, by attorney, entered his appearance to it. This petition set forth the death of the cred-

itor, the appointment of the party as his adminis-
trator, and asked the revivor. In point of fact, the
person named as administrator in this order and peti-
tion did not qualify as such until March 10, 1881. At
the May term, 1881, of the court, however, this order
was entered:

"The petition of revivor having been filed herein,
and the defendants, J. H. Fishback and W. A. Fish-
back, having entered their appearance thereto, it is
now ordered and adjudged that the judgment herein
in favor of the defendant, W. L. Roberts, be, and the
same is, now revived against the said J. H. Fishback
and W. A. Fishback." Thereafter the land was sold.
It failed to pay the lien debt. A judgment was then
entered ordering the sale of the thirty acres that had
been allotted as a homestead. After this, but before
the sale, it was, for a valuable consideration, conveyed
by J. H. Fishback to Annie and James F. Fishback.
They were, however, *pendente lite* purchasers; and
on September 18, 1882, it was sold under the decree,
and bid in by the appellee, E. J. Green, for four hun-
dred and seventy-three dollars and eighty cents, he
being one of the appraisers, and it being appraised at
one thousand two hundred dollars. J. H. Fishback
alone filed exceptions to the report of the sale; but it
was confirmed. Green obtained a deed, and an order
for a writ of possession, but did not cause it to issue
until nearly two years after his purchase. Thereupon,
John H. Fishback brought one of these actions, seek-
ing the vacation of the judgments above named, and
enjoining the *habere facias* of Green; and the appel-
lants, Annie and James F. Fishback, brought the other,

asking substantially the same relief. By an amended petition, however, they assert that Green bid the land in for the appellant, James F. Fishback, under an agreement with him that he might redeem it; and it is asked that Green be adjudged to be a mere holder of the title in trust.

The two cases present three questions: First. Did the court in Grant county have jurisdiction to decree the sale of the land in Kenton county? Second. Were all the proceedings looking to the sale of the land, had subsequent to the death of the lien creditor, void for want of a revivor? Third. If Green purchased the thirty acres of land under an agreement with James F. Fishback that he might redeem it, is the contract an enforceable one, and should a court of equity under all the existing circumstances exert itself in that direction?

Ordinarily, a lien upon land must be enforced in the proper court of the county where the property is situated; and the question arises, whether the law is otherwise in an action where it is sought to throw the debtor's estate into insolvency, and divide it among his creditors. Section 62 of the Civil Code provides:

"Actions must be brought in the county in which the subject of the action or some part thereof is situated—

"1. For the recovery of real property, or of an estate or interest therein.

"2. For the partition of real property, except as is provided in section 66.

"3. For the sale of real property under title 10, chapter 14, or under a mortgage, lien or other incumbrance or charge, *except for debts of a decedent*."

Section 65 says: "An action to settle the estate of a deceased person must be brought in the county in which his personal representative was qualified."

It will not be questioned but what lands of a decedent lying in other counties than that where the suit to settle his estate may be pending, may be sold under a decree rendered in it. This is necessary to save cost and multiplicity of suit. The last reflection dictates that any other course would be improper. So urgent are the reasons for it, that if the statutory provision upon the subject were of doubtful construction, it would be so construed. Section 3, article 2, of chapter 44 of the General Statutes, in speaking of suits to throw the debtor into insolvency, provides: "Any number of persons interested may unite in the petition; but it shall not be necessary to make any persons defendants except the debtor and the transferee; and the action and proceedings as to the mode of proving claims *and otherwise*, shall be conducted *as actions and proceedings for the settlement of the estates of deceased persons are now required to be conducted*, so far as the same are applicable." It is true that the first section of the same article says: "But nothing in this article shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution;" but considering the subsequent section already quoted, as well as the provisions of the Code *supra*, and the manifest reasons why they should be so construed when viewed together, it seems plain to us that the words "vitiate or affect," as used in the statute,

relate to the validity of the mortgage, and that in an action to settle an insolvent estate, the court may decree the sale of land situated elsewhere in the State than in the county where it is pending.

"The subject of the action" in such a suit is the settlement of the entire estate of the insolvent, and not one particular portion of it; and the Code provides that it "must be brought in the county in which *the subject* of the action, or some part thereof, is situated." The object of an action, such as we are now considering, is to settle and distribute the estate of the insolvent among his creditors. The Grant court had jurisdiction of the subject of the action, and the proceeding *in rem* was incidental. We will suppose the insolvent debtor owns land in a dozen different counties. If the construction contended for is to prevail, then that many suits will be necessary to the desired end. This can not be. Common sense forbids a construction leading to such needless expense and litigation.

With the death of the lien creditor his cross-action abated. Without a revivor the subsequent proceedings would have been void. Either a service of the order of revivor or an entry of appearance to it by the adverse party was necessary to render it complete. It is evident that when the petition of revivor was filed and the appearance of J. H. Fishback entered to it by attorney, there was, in fact, no administrator of the deceased creditor. The petition, however, remained on file, and soon after the person therein named as the personal representative did, in fact, become such; and the action then proceeded without any suggestion from

the debtor that it had not been properly revived, although he was taking steps in it, and, in fact, excepted to the report of the sale to the appellee Green. It is unnecessary to determine, however, whether this was not a waiver of the statutory requirement as to the service of the order of revivor; nor does the question of the power of the attorney, who entered the appearance of the debtor to the petition of revivor, to do so, or whether, owing to his employment by other parties to the suit, he occupied such a position that the law and public policy would not admit of his doing it, although he may have acted, as he undoubtedly did, in good faith, arise; because the order subsequently made at the May term, 1881, and cited above, shows that the debtor personally appeared in court and entered his appearance to the petition of revivor then on file.

It appears that upon the day when the Green land was sold, James F. Fishback was proposing to purchase it. He applied to Green to become his security. He declined, but told Fishback that he would buy it, and he (Fishback) could become his security, and then pay the purchase money and redeem the land. It is unnecessary to review all the evidence upon this question. When all of it is considered, there is no doubt but what Green bought the land in for Fishback, and under an agreement that he might redeem it by paying the purchase money with its interest. All of the circumstances strengthen this conclusion. Several witnesses, including one introduced by the appellee Green, prove in substance that he said so. He contends that the redemption privilege of Fishback, under the agreement

between them, was limited in time, to-wit: If he re-
paid the purchase money within a year from the time
of the sale, then he was to have the land back; but
if he did not, then Green was to hold it.   This right
the law already gave him in the event the land did not
bring two-thirds of its appraised value.   It is suffi-
cient to say that there is some conflict of testimony as
to whether the right to redeem was under the agree-
ment thus restricted.   Green allowed James F. Fish-
back to remain in possession of the property, without
any effort to disturb him, for nearly two years after
the sale.   After it was made, Fishback, at a consider-
able cost, built a barn upon the place and otherwise
improved it.   The conduct of the parties speaks louder
than their words even.   It is perfectly evident that
the purchase was made by Green for Fishback.   He
bid it in at four hundred and seventy-three dollars and
eighty cents, when, as one of the appraisers, he had
just said it was worth one thousand two hundred dol-
lars.   If judged by the entire transaction, the land was
to be held by Green merely as security for the money,
then the time of redemption is not material.   We are
disposed to so consider it.   This is equitable.   If this
view be not adopted, then Green gets the land for a
fraction of its value, together with the improvements
put upon it, evidently in good faith, by Fishback since
the sale.

An agreement by A to bid in land at a sale and hold
it subject to an agreement with the owner to redeem
it is enforceable.   It is not *a sale* by A, but he holds
it in trust for the former owner.   The statute of
frauds, therefore, presents no obstacle to a recovery

in such a case. (Martin v. Martin, 16 B. M., 8 ; Miller's Heirs v. Antle, 2 Bush, 407 ; Green v. Ball, 4 Bush, 586.)

The appellants, Annie and James F. Fishback, are now asking equity, however. Their pleadings show that they were slow in setting up that the purchase by Green was for James F. Fishback's benefit. He has never brought the money into court to repay the appellee, Green, nor has he tendered it to him. If any relief be granted him, it should, therefore, be upon terms that he who asks equity must do equity.

The judgment in the case of John H. Fishback against E. J. Green, &c., is affirmed ; but under the peculiar circumstances the judgment in the case of James Fishback, &c., against E. J. Green, is reversed, and cause remanded with directions to the lower court to afford the appellant, James F. Fishback, a reasonable time within which to bring the purchase money paid by the appellee, Green, into court for him, together with interest thereon from the time of payment, and Green's cost in both this and the lower court in this suit; and if he does so, then the lower court will cancel the commissioner's deed to Green, and set aside all subsequent proceedings in his favor looking to the possession of the land, and order the money paid to him ; but if this be not done, then the court will dismiss this action at the cost of the appellants.