## Ware v. Bennett et al.

(Decided May 11, 1911.)

### Appeal from McCracken Circuit Court.

1.  Equity—Finding of Chancellor—Plaintiff sued her sister and her husband for partition of land. Her sister's husband claimed title to it by virtue of an oral agreement with his father-in-law by which the father-in-law agreed to purchase it at a commissioner's sale and hold it in trust for defendant and permit him to redeem it. Held that the evidence supports the finding of the chancellor that there was such an agreement.

2.  Statute of Frauds—Oral Agreement—An oral agreement to buy land for another at a commissioner's sale, and to hold it in trust for and permit the latter to redeem it is not within the Statute of Frauds.

3.  Assignment—Payment—Security—Where one of two sisters sells to the other her interest in certain personal property belonging to their mother's estate, and also rents to the other her part of the home farm for two years, and the other sister agrees that the purchase price and the amount due for rent shall be paid out of her share of the money coming to her out of her mother's estate, and authorizes the administrator to pay same, such assignment does not operate as a payment, but only as surety for the amounts due.

4.  Receipt—Conclusiveness—Check—Plaintiff gave to her husband who was administrator of her mother's estate, a receipt for $900.00. On the same day her husband gave her a check for $750.00, which was not paid. A week later the husband committed suicide. Held that although plaintiff could not testify as to any transactions with her deceased husband, the nonpayment of the check was sufficient to overcome the effect of the receipt to the extent of the amount of the check.

5.  Laches—Plaintiff's husband who was administrator of her mother's estate, defaulted and committed suicide. Plaintiff who held an order on him to pay to her certain sums coming to her sister out of the latter's share of the estate, failed to present and collect same; Held, that as there was nothing in the administrator's conduct to show that he was not proceeding properly in the administration of the estate and it was agreed between plaintiff and her sister that there should be no undue haste in settling the estate, and neither the latter nor her husband was asking for a settlement and the evidence fails to show when the defalcations took place, plaintiff was not guilty of such laches as precludes a recovery against her sister for the amounts due her under the assignment.

CAMPBELL & CAMPBELL for appellant.

HENDRICK & CRICE for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing on original and affirming on cross appeal.

Appellant, Jesse Maxon Ware, brought this action against her sister, Daisy Bennett, and her husband, Greene W. Bennett, for the partition of a certain tract of land located in McCracken County and to recover of the appellees the sum of $600.00, the purchase price of appellant's interest in certain personal property which she sold to appellees, and for $300.00 claimed to be due her by appellees as rent for the Maxon farm. R. J. Barber, administrator of Sallie Maxon, appellant's mother, and one Howard Robinson were also made parties defendant. Appellee Greene W. Bennett, himself, asserted title to the land in controversy. He pleaded that, in 1892, he and one U. A. Peters were partners. Of the land in controversy he owned three-fourths, while Peters owned one-fourth. During the continuance of the partnership, Bennett and Peters executed their joint promissory note to Morris Maxon, the father of appellant and Daisy Bennett, dated October 13th, 1904, by the terms of which they promised to pay him, on or before the 15th day of February, 1905, the sum of $850.00. To secure said note they and their wives executed and delivered to Morris Maxon a mortgage on the property in question. At the time Bennett and Peters were unable to come to a settlement of their partnership affairs. Bennett asked Morris Maxon to bring suit upon the note and procure a sale of the real estate. Morris Maxon agreed with Greene W. Bennett to bid in the property and hold it in trust for him. In pursuance of said agreement the property was bid in and the deed thereto taken in Maxon's name. Thereafter Maxon recognized the trust, and permitted Bennett to retain possession and control of the property, and to buy, sell and lease it as his own; that appellee had paid for and redeemed the land, and was, therefore, entitled to it free from any claim of appellant.

As to the claims amounting to $900.00, the appellees, Bennett and wife, pleaded that the money was to be paid only out of Daisy Bennett's share in her mother's estate, and that it was either paid or was lost by appellant because of her laches in failing to collect the same

from her husband, who was administrator of her mothers's estate.

Considerable testimony was taken, and, upon submission of the case, the chancellor held that the land in controversy belonged to Greene W. Bennett, but that the latter had only paid Maxon the sum of $500.00; that this payment was made November 27th, 1899. After crediting this payment the court found that $943.17 was due. This amount was adjudged to be a lien upon the land in controversy, and R. J. Barber, as administrator of the estate of Sallie Maxon, deceased, was given judgment therefor. The property was directed to be sold and the proceeds thereof, after the payment of the aforesaid lien claim and costs of the action, was directed to be paid to Greene W. Bennett. As to the claim for $900.00, the court found for the appellees to the extent of $600.00, and gave judgment for appellant in the sum of $300.00, with interest, amounting at the time of the judgment to $355.00. From the entire judgment Jesse Maxon Ware appeals, and from so much of the judgment as awards appellant the sum of $355.00, as rent, Daisy Bennett and Greene W. Bennett prosecute a cross appeal.

The facts are as follows: Morris Maxon died July 21st, 1903. He devised all of his property to his wife, Sallie Maxon. She died April 21st, 1904. Ed. Ware, appellant's husband, was appointed her administrator. He qualified April 26th, 1904.

As to the land transaction, C. C. Thompson testified that he was present just before Morris Maxon foreclosed the mortgage on the land in controversy, and heard a conversation between Maxon and Greene W. Bennett. In this conversation Maxon told Bennett he did not want the land; all he wanted was the money; that he would deed the land back to Bennett, and the latter was to redeem it and pay the indebtedness. Several other witnesses testified that Maxon stated to them that the land belonged to Greene Bennett, and to see him in regard to it. After the foreclosure of the mortgage, Bennett continued to control the land. He made leases to three or four different parties and conducted sales of the land. He sold $500 worth of the land to one Bud Dale, who gave him a check for that amount, payable to Morris Maxon. Dale testified that this transaction was conducted by Bennett. The land, at the time of the fore-

closure of the mortgage, was worth from $2,000 to $2,-
500.

The court properly excluded statements made by
Morris Maxon to the effect that the land was his. Had
he lived, this would not have been competent to show
title, and is not, therefore, admissible for the purpose of
showing title in those claiming through him.

When we take into consideration the market value of
the land in controversy and the relationship existing be-
tween Bennett and his father-in-law, and all the cir-
cumstances connected with the transaction, we conclude
that the chancellor properly held that the evidence was
sufficient to show that there was an agreement between
Bennett and Maxon that the latter should buy the land
and hold it in trust for Bennett, with the understanding
that Bennett should redeem the land; and, as under the
repeated adjudications of this court this character of
transaction is not within the statute of frauds (Fishback
v. Green, 87 Ky., 113; Parker v. Catron, 120 Ky., 145) it
follows that the judgment awarding Bennett the land,
subject to a lien for the balance due thereon, was proper.

As to the other matters in controversy, it appears
that, on December 20th, 1904, Daisy Maxon Bennett and
Greene W. Bennett, her husband, and Jesse Maxon
Ware and Ed. Ware, her husband, entered into the fol-
lowing agreement:

"This Witnesseth: That we, Daisy Bennett, and her
husband, Greene W. Bennett, have bought the interest of
Jesse Ware in the farm implements, live stock and food
now on the Maxon farm fully set out in a paper hereto
attached and made a part hereof with our names signed
thereto for the price of six hundred ($600) dollars,
which amount is to be paid by giving to said Jesse Ware
said amount out of my, Daisy Bennett's, share of the
money coming to us out of the estate of our mother, and
the administrator is hereby authorized to pay same to
her out of any money in his hands. We have also rented
said Mrs. Ware's half-interest in the land for the period
of one year commencing the first day of January, 1905,
and ending the 29th day of December, 1905, in the price
of $150, same to be deducted out of my share of our
mother's estate and paid to said Mrs. Ware.

"We promise as part of the rent in addition to the
said $150 to take good care of said farm and fences and

houses thereon, and return same at the expiration of said. year in as good order as when received, natural tear and wear only excepted, and we promise not to cut nor permit to be cut any timber now on said place, unless done by mutual consent of Mrs. Ware and ourselves, except when a sufficiency of fire wood and plant beds can not be had of the fallen timber.

"It is agreed that all flowers shall remain where they are, and shall receive the proper care, cultivation and protection.

"It is agreed that that part of the fencing lately burned shall be repaird at the joint and equal expense of Mrs. Bennett and Mrs. Ware, and that all other fencing shall be done and repaired at the expense of Mrs. Bennett—so also any repairs put on any of the houses, barns or cribs.

"Witness our hands this 20th day of December, 1904.
        (Signed)   "DAISY MAXON BENNETT,
                    "GREENE W. BENNETT,
                    "JESSE MAXON WARE and
                    "ED. WARE.

"This contract as to rent continued for the year of 1906 by mutual agreement of
                    "DAISY MAXON BENNETT,
                    "GREENE W. BENNETT,
                    "JESSE MAXON WARE, and
                    "ED. WARE."

We conclude that the foregoing assignment by Daisy Bennett to Jesse Maxon Ware, with the direction that the sum of $600, the purchase price of the farming implements, live stock, etc., sold by the latter to Daisy Bennett and her husband, was not to operate in and of itself as a payment, either of the $600 or of the amounts due as rents. On the contrary, it was simply a method of securing the payment of the sum so due. That being true, Jesse Maxon Ware's right to recover depends upon whether or not the amounts recognized as due under the contract were actually paid, or whether or not she was guilty of such laches in failing to present and collect her claim as will preclude a recovery. On the books of Ed. Ware, administrator, appears the item, "To Jesse Maxon Mare, $900." There is also introduced a receipt, signed by Jesse Maxon Ware, wherein she acknowledges the payment of $900. This receipt bears date September

10, 1906. On the day this receipt was given, Ed. Ware executed to his wife a check for the sum of $750. Ed. Ware committed suicide on September 17, 1906. It is insisted that, because no one testifies for Jesse Maxon Ware except herself, and her evidence is incompetent as to any transaction had with her husband, the notation on Ed. Ware's books and the receipt for $900 are exclusive of the question of payment. The fact remains, however, that the check for $750 was never paid. As this was executed on the same day as the receipt, and it does not appear from his books that any payment was made at any other time, we conclude that there was no payment to the extent of $750. When we take into consideration that Mrs. Ware was indebted to one W. A. Gardner upon two notes, dated October 5, 1898, and there is in the record a receipt from Gardner for $150, signed by W. A. Gardner and dated December 21, 1903, and in which he agrees to hold off bringing suit, and it appears that, about that time, Ed. Ware withdrew from the bank where he had his account the sum of $150, and it does not appear that this payment was made by Mrs. Ware, we conclude that the $150 was paid by Ed. Ware out of his funds as administrator, and that Mrs. Ware received the benefit of this payment. As the only other payment claimed to have been made was by virtue of the $750 check, and as this check was not paid, we conclude that the evidence fails to show any payment except that for $150.

The next question is: Was Mrs. Ware guilty of such laches in failing to present and collect her claim as to release Mrs. Bennett and her husband? From Ed. Ware's bank book, it appears that he deposited $913 on May 9, 1904, and $2,714 on June 5, 1904. All of this money was checked out at the time of the written assignment above set out. After that time he seems to have deposited $1,000 on October 3, 1905, and to have paid it out on the same day. On October 25, 1905, he deposited $1,822. This appears to have been checked out in small sums, with the exception of $979.60, which was in the bank to his credit at the time of his death, The bank, of course, declined to pay the check for $750 when it learned of Ed. Ware's death. At that time the defendant, Howard Robinson, who was the ward of Morris Maxon, had a preferred claim against the estate, amounting to about $600. Had Mrs. Ware collected the amount

on the check, she would have had to return it, as it was subject to the payment of the preferred claim. There is no evidence in the record going to show when Ed Ware misappropriated the funds to his credit as administrator. It seems to be admitted that a misappropriation took place, but when does not appear. For aught the record shows the entire misappropriation may have taken place before the assignment of December 20, 1904. It further appears that, at the time of his employment, Ed. Ware enjoyed the confidence not only of his wife, but of his sister-in-law and her husband. He was appointed administrator upon their application. It was agreed and understood between Mrs. Ware and Mrs. Bennett that there should be no haste in the settlement of the estate. There had been nothing in Ed. Ware's previous conduct to justify the suspicion that he would not properly administer the estate. Neither Mrs. Ware nor Mrs. Bennett was insisting upon a settlement. When we consider the relationship of the parties and the fact that there is no evidence tending to show when the defalcations took place, and the further fact that the order to the administrator simply directed him to pay the sums therein named out of Daisy Bennett's share of her mother's estate, and it was agreed that there should be no haste in settling the estate, and there is nothing to show that the administrator was not proceeding properly, we fail to see wherein appellant was guilty of laches in not collecting her claim to her sister's share of the estate, when neither Mrs. Bennett nor her husband was insisting on a settlement or the payment of that part of her mother's estate which she had not assigned.

We, therefore, conclude that appellant is entitled to recover of appellees the sum of $750, with interest thereon from the time the suit was brought.

Judgment on the cross appeal affirmed; judgment on the original appeal reversed and cause remanded, with directions to enter judgment in conformity with this opinion.