Merrimack, ⎱
June 27, 1913. ⎰

## Mailand E. Prescott *v.* George G. Jenness.

Where a mortgagor, acting upon the belief that the time for redemption has been
extended after foreclosure, makes an arrangement whereby a third party is to
pay the debt and receive an assignment of the mortgage, his right to redeem is
enforceable in equity as against the assignee.

Where a mortgage title is acquired under an agreement to hold the same for the
benefit of the mortgagor and to make written acknowledgment of the right of
redemption which is mutually understood to exist, the purchaser is in equity
required to execute such declaration of trust and cannot interpose the statute
of frauds as a defence to an action for the specific performance of his oral con-
tract.

Bill in Equity, for specific performance and an accounting.
Facts found by a master. Transferred without a ruling from the
October term, 1912, of the superior court by *Mitchell*, J.

In 1905, the plaintiff as owner of the land in controversy erected
certain buildings thereon, including a water-tower and tank which
were used in connection with a system of pipes to supply water to a
large number of houses in the vicinity. The pumps used to fill the
tank with water were operated by a windmill located on the land,
supplemented by a gasoline engine located in a building adjacent
to the tank-house. ' Water pipes or mains, except the pipes leading
from the mains to the houses, were laid by the plaintiff, and he was
the owner of them when he put them in the streets. There were
some 12,500 feet of piping, which was necessary to the enjoyment
of the water-works system.

October 24, 1905, the plaintiff mortgaged the land for $1,700 to
a bank in Concord without making any special reference to the water
pipes. In 1908, the bank began foreclosure proceedings which be-
came absolute on April 24, 1909. There was also a second mort-
gage on the premises. After the foreclosure became absolute the
bank offered to reconvey the property to the plaintiff, upon the
payment to it of the mortgage debt and interest and the expenses
of foreclosure. In May, 1909, the plaintiff made an arrangement
with one Hill, by which he was to procure the necessary funds.
While these negotiations were pending, the bank advertised the
land to be sold at auction on June 26. June 21, the defendant in-
quired of the plaintiff if the water-works were to be sold at auction,
to which the plaintiff replied that they were not to be so sold, as

he had arranged with Hill to raise the money to repurchase the property. The defendant then told the plaintiff that he would treat him as well as or better than Hill, if he could have a chance; and in consequence of the defendant's solicitations, the plaintiff abandoned all negotiations with Hill and agreed to look to the defendant to furnish the necessary funds.

June 23, the plaintiff and the defendant consulted with one Taylor, who was authorized by a power of attorney to act for the defendant in this matter, and it was agreed that the plaintiff should have two years in which to redeem. It was distinctly agreed that the plaintiff would give up his dealings with Hill and that the defendant would protect the plaintiff's interest in the property. Both parties understood that this could be done for $1,850. The agreement was that the defendant was to acquire the title to the property from the bank and to hold it for two years, subject to the right of the plaintiff to a conveyance of it within that time upon the payment of the sum advanced by the defendant, with interest, less the net income derived from the business. The plaintiff was to occupy the house on the premises in consideration of looking after the engine and keeping the tanks supplied with water.

June 25, Taylor, the agent of the defendant, learned that the bank would insist upon making a sale of the property. At the auction on the next day, it was stated that the bank would not undertake to convey title to the piping outside the land to be sold. Taylor then told the plaintiff that the defendant would have nothing to do with the property if the piping was not included. In reply, the plaintiff told Taylor that he "would see that everything was fixed up all right on the pipes" if the property was purchased. Thereupon Taylor, as the defendant's agent, bid off the property for $2,050, and on June 28 received a quitclaim deed from the bank to the defendant. After the auction sale and before the deed was given, the plaintiff made to the defendant a bill of sale of the piping, gasoline engine, and shafting connected with the water-works, and delivered the document to Taylor as the defendant's agent. On account of the question raised at the auction in regard to the piping, the plaintiff executed the bill of sale in confirmation of the title acquired by the defendant at the auction sale. Taylor understood that it would preclude the plaintiff from raising any question as to the title to the pipes. While the plaintiff and Taylor were waiting for the bill of sale to be written, Taylor assured the plaintiff that there was no question about his right of redemption, but that a

writing to that effect could not be given until the defendant re-
turned from a western trip.

The defendant before he went away, and Taylor afterward, prom-
ised the plaintiff that if he had no further business with Hill in re-
gard to this matter his interests in the property would be protected
by the defendant and that he would have his right of redemption
at any time within two years.   At the time the defendant made his
agreement with the plaintiff he intended to keep it, but later he
found the water plant to be a better paying proposition than he had
anticipated.   The plan to freeze out the plaintiff was invented by
Taylor, was acquiesced in and put in force by the defendant, and
was a gross fraud upon the plaintiff's rights under his original agree-
·ment with the defendant, supplemented by the subsequent promises
and agreements of Taylor for the defendant.   The fact that the
property was bought at the auction sale was used as a mere pre-
text.   The increased price paid simply meant an increased amount
for the plaintiff to raise in order to redeem.   The plaintiff requested
the defendant to give him a writing showing the terms of their
agreement, but this the latter refused to do.   At the time of the
auction sale the property was fairly worth from $3,000 to $3,500.

*Foster & Lake* and *Remick & Jackson* (*Mr. Lake* orally), for the
plaintiff.

*Martin & Howe* and *Robert W. Upton* (*Mr. Upton* orally), for the
defendant.

WALKER, J.   The bank extended the time of redemption after the
foreclosure proceedings were completed.   Prescott by paying the
amount due on the mortgage could have redeemed the land, and
his title would have been freed from the mortgage lien.   In conse-
quence of the offer of the bank to reopen Prescott's foreclosed right
of redemption, he had made an arrangement with Hill by which
Hill was to pay the bank the amount of its claim and receive an
assignment of the mortgage.   If this arrangement had been carried
out, Hill would have been in effect the mortgagee, holding the land
subject to the right of Prescott to redeem from the mortgage in
five years according to the arrangement.   The principal reason why
this would have been the state of the title is that it was the inten-
tion of the parties, which equity would recognize and enforce.   *Ladd*
v. *Wiggin*, 35 N. H. 421, 427: *Stantons* v. *Thompson*, 49 N. H. 272;
*Bacon* v. *Goodnow*, 59 N. H. 415;   *Hammond* v. *Barker*, 61 N. H. 53;

*Salvage* v. *Haydock*, 68 N. H. 484. Prescott then had such an interest in the premises as gave him a right of redemption.

But when Prescott accepted Jenness in the place of Hill, his interest in the property was not changed thereby. His right to redeem was a right they not only recognized as an existing fact, but they were endeavoring to protect and extend it for the plaintiff's benefit. It is not material to decide whether, as a matter of strict legal construction, the right of redemption had terminated at the time of the auction sale; for the parties understood that it had not, but was to continue for two years longer. A mortgagor who, through misapprehension and mistake, has acted upon a belief that the time of redemption has been extended, may be permitted to redeem after a foreclosure when no other rights have intervened. *Felker* v. *Mowry*, 69 N. H. 164. "To deny relief in such a case would be contrary to the fundamental principles of equity jurisprudence." *Ib.* 166. The arrangement by which the defendant was to acquire the mortgage title at the sale and hold it for the plaintiff's benefit was based upon the assumption that the plaintiff had an interest in the land which he desired to protect and which the defendant was willing to assist him in doing. That interest was the right, then understood to exist, of redeeming the land from the bank's mortgage. It never occurred to the defendant to dispute that right until afterward, when the idea occurred to him of "freezing" the plaintiff out.

It does not appear just when the bank withdrew its offer to allow the plaintiff to redeem, and it may not be material. The parties did not negotiate at the time of the sale on the theory that the plaintiff's interest was irretrievably lost, but on the theory that it had not ceased to exist. If this was an erroneous assumption, the defendant is not in a position to question its soundness. *Parker* v. *Catron*, 120 Ky. 145. The defendant did not understand that he was buying the property for one who was a stranger to the title and had no legal or equitable interest in it; for after the sale, through his agent, Taylor, he assured the plaintiff that his equity of redemption was not impaired, recognizing that he had assumed a trust relation to the plaintiff with reference to the plaintiff's admitted right of redemption. With this understanding, moreover, he induced the plaintiff to execute a bill of sale to him of the piping in the streets, in order to avoid any doubt that might arise as to the passing of the title to the piping under the bank's deed, which was afterward executed. The intention of the parties is conclusively manifest. They intended to keep open the plaintiff's right of re-

demption, and there is no equitable reason why it may not, or should not, be so regarded.

While the parties were waiting for the bill of sale to be drawn and before the delivery of the deed to the defendant or his agent, Taylor, the latter not only assured the plaintiff that there was no question about his right of redemption, but, in substance, that a writing to that effect would be given to him by the defendant. There is no serious controversy that Taylor had authority under his power of attorney from the defendant to make this representation. Having obtained the bank's title to the real estate under the circumstances disclosed, having obtained from the plaintiff the bill of sale in confirmation of his title to the piping, which it seems he deemed essential, and having agreed to put the transaction between him and the plaintiff into writing, the defendant is in equity required to perform his contract and execute to the plaintiff a declaration of trust in accordance with his agreement. To hold otherwise would be to give effect to a contract the parties did not intend to make; in other words, to recognize and enforce the defendant's deed as an absolute conveyance unincumbered with any trust or equitable right in favor of the plaintiff. And this unjust result the defendant seeks to justify upon the ground that the plaintiff had no interest in the property to be protected under the agreement and that the statute of frauds applies. But it is clear that, as the original mortgagor, he had a valuable right of redemption which was continued after the foreclosure was complete, which the defendant as well as the plaintiff understood existed at the time of the auction, and which at that time the parties were attempting to protect for a further period of two years. The assumed interest was the interest of the plaintiff as the mortgagor of the land; and equity requires that the defendant should hold the land subject to the acknowledged and admitted right of the plaintiff to redeem. Whether the bill of sale of the piping conveyed any title or not, it shows conclusively the parties understood that the plaintiff had some interest in the subject-matter of the sale, which he parted with at the defendant's request in consideration of the defendant's agreement to hold the property in trust for the plaintiff. The purpose was to perfect the defendant's title, which he was to hold as security for the money advanced by him in the purchase of the property and as a trust estate for the benefit of the plaintiff. In other words, the defendant acquired the bank's title to the property and also the plaintiff's right or title to the piping, which was deemed

to be of some value; and there is no reason in equity why he might not agree to extend the time of redemption as the bank had done once and as it might have done again, especially if it had received a bill of sale of the piping. The plaintiff was not a stranger to the title. He had, as against the defendant, an equitable interest in the property, which the defendant cannot now controvert. To allow him to do so would be to sanction a fraud upon the plaintiff.

The effect of the defendant's contention is that he is merely guilty of a breach of his oral contract, which cannot be enforced in equity because the statute of frauds requires such a contract to be in writing. P. S., c. 215, s. 1. If it appeared that the plaintiff had no interest in the property or was a mere stranger to the title, or if the parties had not negotiated on the assumption that the plaintiff's interest was to be protected, it may be that this contention would be sound. In such a case the effect of the transaction would not amount to a fraud in equity upon the plaintiff, and specific performance would not be decreed. There would be merely a breach of a parol promise which, to be enforceable, the statute requires shall be in writing. "It is not necessary that actual fraud should have been intended. It is sufficient that the facts be such that they operate as a fraud, and the party is thereby deprived of his property, of an estate which passes to and is retained by another, either the estate which he before had or the money vested in it. In none of these cases is it necessary to prove those facts by writing. The statute of frauds does not apply to such cases. Fraud, either actual or constructive, may always be proved by parol. It is only to prevent fraud that the statute was made, not to cover or conceal it." *Jenckes* v. *Cook*, 9 R. I. 520, 525.

If at the time the defendant got his deed from the bank he intended to hold the property for the plaintiff in order that the latter might have an opportunity to preserve his interest in the land, he voluntarily assumed the position of a trustee and is bound to perform the trust; if he did not have that purpose, but intended to hold the land as his own in repudiation of the plaintiff's interest therein, he was clearly guilty of a gross fraud upon the plaintiff in the beginning, on account of which equity will charge him as a trustee in accordance with his agreement. In *Brown* v. *Lynch*, 1 Paige 146, the appellant had agreed to bid off mortgaged land at a sale thereof for the benefit of the mortgagors, who were then unable to redeem, and after the sale disavowed the trust. In the opinion the chancellor says (*p.* 158): "If the appellant did in fact bid it off for them

under the agreement, he held it in trust for them, and had no other interest in it than that of a mortgagee, to secure the repayment of the purchase money and the $60 agreed to be paid to him for his trouble. . . . But if he had no such intention, and did not in fact bid off the property in trust for them, he was guilty of a fraud which this court will relieve against." See, also, *Ryan* v. *Dox*, 34 N. Y. 307.

In *Fishback* v. *Green*, 87 Ky. 107, 114, the court say: "An agreement by A to bid in land at a sale and hold it subject to an agreement with the owner to redeem it is enforceable. It is not *a sale* by A, but he holds it in trust for the former owner. The statute of frauds, therefore, presents no obstacle to a recovery in such a case." To the same effect, see *Judd* v. *Mosely*, 30 Ia. 423, 428. "An agreement by one person to purchase land for another, and the purchase of the same accordingly, under circumstances which would amount to a fraud upon the latter if the former were afterward to repudiate his promise, is not within the statute. The purchaser cannot, in such a case, be allowed to adopt and use the agreement by which he obtained title, and repudiate its conditions, by which he was to convey it, in execution of the contract, to the other party." *Cutler* v. *Babcock*, 81 Wis. 195, 203.

In cases of this character it is the interest of the party seeking specific performance, in the land, which makes the purchaser under the parol agreement a trustee of the former. The effect of the subsequent repudiation of the agreement by the purchaser is to deprive the other party to the contract of his interest in the land and to work a fraud upon him; and for this reason the purchaser is not allowed, when called upon to perform his contract, to shield himself under the statute of frauds. He is required to perform the trust he assumed when he became the purchaser. Bro. St. Fr., s. 96a. "Specific performance of a parol contract to convey land will be decreed, in favor of the vendee, who has performed his part of the contract, when a failure or refusal to convey would operate as a fraud upon him." *Johnson* v. *Bell*, 58 N. H. 395; *Hitchins* v. *Pettingill*, 58 N. H. 386; *White* v. *Poole*, 74 N. H. 71; *Giffen* v. *Taylor*, 139 Ind. 573.

The practical result sought in this case is the defendant's performance of his agreement, made before he obtained the deed, to make a declaration of trust in favor of the plaintiff. If he had done that, this controversy would not have arisen. "Where it appears that the understanding at the time of the verbal promise was by a writing to comply with the provisions of the statute of frauds, it is something more than a mere verbal promise. The opposite party

relies upon the special stipulation to reduce it to writing and thus make him secure. . . . If in confidence that such writing will be executed the legal title is acquired, it is a fraud in the purchaser to refuse to do what was promised and claim to hold discharged of it, which will constitute him a trustee *ex maleficio.*" *Wolford* v. *Herrington*, 74 Pa. St. 311, 315. Whether this language may not be too broad as a general proposition, it is unnecessary to inquire; but its application cannot be doubted to a case, like the present, where the innocent party has an interest in the subject-matter and has actually released to the purchaser any title he may have to a substantial part of the premises conveyed, in consideration of the promise of the latter to execute a declaration of trust in accordance with the parol agreement of the parties. Whatever the intention of the purchaser may have been at the time of the sale, his subsequent refusal to declare the trust in writing and to hold the property for the protection of the other party's interest operates as a palpable fraud, which the statute was not intended to validate.

The plaintiff is entitled to a decree for an accounting by the defendant of the income received from the property since the auction sale, upon furnishing reasonable security to pay to the defendant the difference between the purchase price and interest, and the net income.

*Case discharged.*

All concurred.