## Koehler, et al. v. Almy, et al.

(Decided December 8, 1914.)

### Appeal from Laurel Circuit Court.

Judicial Sales—Purchaser at—Parol Evidence.—Parol evidence is admissible to show that the purchaser at a judicial sale bought under a verbal agreement to hold the property for the defendant, and admissions by the purchaser are sufficient to establish the trust where they are supported by the circumstances.

HAZELWOOD & JOHNSON for appellants.

C. C. WILLIAMS and H. J. JOHNSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

On April 19, 1904, Elizabeth May conveyed to E. L. Koehler a tract containing forty-four and three-fourths (44¾) acres of land in Laurel county in part payment for which he executed two notes, each for $406.79. One of these notes was assigned to the East Bernstadt Banking Company. On August 20, 1904, Koehler executed to A. A. Almy a mortgage on the land to secure a debt of $300. He failed to pay the purchase money notes or the mortgage, and in addition incurred a debt to the banking company of $400.65. A suit was brought to sell the land for the debts; a judgment of sale was entered on February 8, 1906. On August 20, 1906, and before the order of sale had been executed, Koehler conveyed to A. A. Almy a tract of land he owned in Garrard county containing 225 acres. The deed is absolute on its face and recites a consideration of $300.00 in hand paid. The order of sale of the Laurel county land referred to was executed on September 10, 1906. The land was appraised at $3,000.00 and was bought by S. W. Almy, the son of A. A. Almy, for $1,731.90, A. A. Almy signing the bond of his son for the purchase money. On February 14, 1908, S. W. Almy, who had received a commissioner's deed, conveyed to Henrietta Koehler, the mother of E. L. Koehler, thirty-five acres of the land, retaining the coal and mineral rights. On February 24, 1908, he conveyed to his mother, Mary E. Almy, the remainder of the tract. On June 25, 1908, he made a lease of the coal under the 35 acres to W. R. Grant. Shortly thereafter, or about that time, A. A. Almy and wife sold to Green Reed, Annie Huston, and Russell Farris a part of the land conveyed by S. W. Almy to his mother, Mary E. Almy, and A. A. Almy received therefrom $950.00 in addition to $600.00 which was paid A. A. Almy by Henrietta Koehler when the deed was made to her on February 14, 1908. On October 13, 1910, Henrietta Koehler conveyed back to Mary E. Almy the 35 acres conveyed to her in settlement of a judgment in her favor enforcing the lien retained in the deed; and on July 3, 1911, E. L. Koehler and his mother, Henrietta Koehler, brought this suit against A. A. Almy, Mary E. Almy, his wife, and S. W. Almy, his son, charging, in substance, that the deed for the Garrard county land was executed as a mortgage and that A. A. Almy had sold from the land, soon after he got the deed, timber for which he received $300, but that he refused to reconvey the land and was claiming it as his own.

They also charged as to the Laurel county tract that A. A. Almy agreed to buy in the land at the sale on September 10, 1906, for E. L. Koehler, agreeing that he would have the purchase made in the name of his son so that he could sign the sale bond as surety, and agreeing that he would hold the property for Koehler and deed it back to him as soon as his money was paid, that the sales of the different parts of the land above referred to were made under this agreement, A. A. Almy agreeing to credit the purchase money so received on the amount he had paid on the sale bond. The defendants filed answer, controverting the allegation of the petition. Proof was taken, and, on final hearing, the circuit court dismissed the petition, and the plaintiffs appeal.

As to the Garrard county land, the testimony of A. A. Almy himself shows very clearly that the deed was a mortgage. He says: "I think that at the time the deed was made we both considered it as security for $300.00, and I am sure that I so held it until the date of our final settlement on March 2, 1909, when Koehler gave up his interest in it and took credit on his open account for $300.00 which he had previously received. In other words, before we stated the final account, we both intended it to be a mortgage, and after that time we intended it to be a deed."

A statement of the final account was made nearly three years after the deed was executed, and if the instrument was a mortgage until that time, it still remains so. Koehler denies the parol agreement to give up the land, and the proof shows that it was then worth $900.00. We, therefore, conclude that this deed must be adjudged a mortgage.

As to the other tract of land, Koehler's statements as to the agreement by Almy to buy the land for him are confirmed by the testimony of three or four disinterested witnesses who testified to statements made by Almy and his son confirming the testimony of Koehler. While Almy denies making these statements, the witnesses are not otherwise impeached; and their testimony is confirmed by circumstances of no little weight. Koehler has remained in possession of the property at all times, and brought this suit to prevent Almy from disturbing him in his possession. He was consulted as to the sales made of the property, and when his mother got the $600.00, he went to Almy, telling him that his

mother could pay $600.00 on the land, that he could borrow the remainder of the money from another, and that he wanted Almy to deed the land back then. To this Almy replied by asking him if his money was not as good as the other man's. In addition to this, it is now conceded by Almy that he took the deed for the Garrard county land as a mortgage; this deed was made only about two weeks before the sale of the Laurel county land. Koehler was running a sawmill; Almy was selling the lumber he cut. If the Garrard county land was a mortgage, it is reasonable that the purchase of the Laurel county land, which was Koehler's home place, was also a security for debt; for Almy at that time was evidently carrying Koehler, who was not a good business man, and seems to have understood very imperfectly his business. His mother, who was seventy-three years old, is a German, and cannot speak English; while E. L. Koehler was born in this country, they speak German in their home, and he seems to have had unbounded confidence in Almy, and to have little understood the form of the transactions above referred to. On the whole case, we are satisfied that the purchase at the judicial sale was made in trust for Koehler, and that all the subsequent transactions must be regarded as ostensibly made by Almy for the purpose of carrying out this arrangement. Koehler was entitled to redeem the property at that sale; a few months later he signed a writing to Almy without consideration, waiving his right of redemption, evidently for the purpose of enabling Almy to sell off the lots and pave the way for Koehler to redeem the property. We, therefore, conclude that Almy held the property in trust for Koehler, and when it was put in the name of his son, or in the name of his wife, the trust still followed it; for the son and the wife were simply the agents of A. A. Almy, and acting for him. We have often held that such a constructive trust may be enforced. (Parker v. Catron, 120 Ky., 145; Ware v. Bennett, 143 Ky., 846, and cases cited.)

On the return of the case to the circuit court a judgment will be entered that both tracts of land are held in trust for E. L. Koehler, and the case will be referred to the commissioner to determine the amount due from Koehler to Almy on either tract, and judgment will be entered in favor of Almy, enforcing a lien on each tract for the amount found due him.

The deed from Henrietta Koehler to Mary E. Almy will be treated as made to rescind the conveyance from S. W. Almy to her and in settlement of the judgment against her, for the purpose of restoring the status as it existed when the conveyance by S. W. Almy to Henrietta Koehler was made. E. L. Koehler will be credited in the settlement with the amount paid by his mother less the value of the lot deeded to her in the settlement. The settlements between A. A. Almy and E. L. Koehler are presumed correct and the burden is upon Koehler to show mistake or fraud. A. A. Almy will be credited by any taxes he paid on the property with interest; and he will transfer to E. L. Koehler the coal lease.

Judgment reversed and cause remanded for further proceedings consistent herewith.