Case 19.—ACTION BY JOHN H. CATRON AGAINST WILLIAM PARKER TO RECOVER A TRACT OF LAND—March 16.

### Parker v. Catron.

Appeal from Knox Circuit Court.

VIRGIL P. SMITH, Special Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

Land—Execution Sale—Purchase by One for Another—Consideration—Payment—Relief for Equitable Owner—Constructive Trust—Estoppel—Statute of Frauds.

1. Land—Execution Sale—Purchase By One For Another—Consideration Paid by Purchaser—Conveyance to Purchaser—Relief Sought by Equitable Owner—Where appellee and his brother jointly owned a tract of land and upon his brother's death his undivided interest was ordered sold to pay his debts, and at the request of appellee was bought by appellant at said sale for appellee's benefit, and after the time for redemption had expired appellant, against the objection of appellee, caused a deed to be made to himself for the land, in an action by appellee against appellant to set aside said deed, alleging that appellant held the title in trust for him, he having all the time been in the actual possession thereof, the court properly decreed the relief sought upon the repayment by appellee to appellant of the money he had paid in the purchase thereof.

2. Constructive Trust—Estoppel—Statute of Frauds—In such a case a constructive trust results by implication in favor of the equitable owner, which rests upon the idea that the pur-

Parker v. Catron.

chaser holds the land in trust for his principal. Construc-
tive trusts are held not to be within the statute because they
rest in the end on the doctrine of estoppel, and the opera-
tion of an estoppel is never affected by the statute of frauds.

3. Same—The fact that the purchaser of the land paid the con-
sideration himself does not destroy the trust, where the pur-
chase was made for another, who offered to pay it, and was
kept from paying it by the act of the purchaser, who re-
fused to accept it, and had the deed made to himself.

J. SMITH HAYS and J. M. HAYS for appellant.

#### SUBJECTS AND AUTHORITIES CLASSIFIED.

1. The pleadings fix the fact that appellee and appellant were
both strangers to the title sold by the Master Commissioner at
the judicial sale at which appellant purchased the property; and
appellee is by the record, in the suit to settle I. C. Catron's estate.
estopped to claim adverse to those claiming under I. C. Catron, or
to dispute the fact that he is a stranger to that title.

2. The fact being fixed by the pleadings that appellee was a
stranger to the title sold at the judicial sale, no resulting trust
can arise under the law in Kentucky, even if the court should
find the oral arrangement claimed by appellee to have been
actually made.

Such agreement would not be sufficient to create a resulting
trust; it would be prohibited by the statute abolishing such trusts;
and would be ineffectual if made under our statute of fraud. (Ky.
Stats., sec. 2353; Ky. Stats., sec. 470, sub-sec. 6; Commonwealth,
for, &c. v. Chesapeake & Ohio Ry. Co., 94 Ky., 16-20; Hocker, &c.
v. Gentry, &c., 60 Ky., 463-74; Parker's Heirs v. Bodley, 7 Ky.,
102-3.)

3. The appellee was incompetent to testify to an oral arrange-
ment with I. C. Catron, and to the payment of money to him
for his moiety of the land in controversy. (Civil Code, sec. 606;
Elliott v. Campbell, &c., 25 Ky. Law Rep., 1841, and authorities
cited.)

4. The particular manner in which the bid of appellant was
given to the Master Commissioner, and the sale made demon-
strate the falsity of appellee's claim, that appellant bid for him
at the sale, or that appellee failed to bid for the property be-
cause appellant was bidding for it.

JOHN H. WILSON, P. D. BLACK and JAMES D. BLACK for
appellee Catron.

#### AUTHORITIES CITED.

2 Duvall, 332, Watson's Adm'r, &c. v. Violett; 4 Ky. Law Rep.,

990, Lisle, &c. v. Lisle's Adm'r; 96 Ky., 339, Graham, &c. v. King, &c.; 2 Pomeroy Eq. Jur., secs. 1030, 1044 and 1053; 16 B. M., 7, Martin v. Martin; 3 Litt., 399, Starks' Heirs v. Cannaday.

OPINION BY CHIEF JUSTICE HOBSON, Affirming.

The father of appellee, John H. Catron, conveyed to him and his brother, Isaac Catron, a tract of land in Knox county. Thereafter a creditor of the father levied an execution upon the land for a debt due him from the father, and the land was sold under the execution. John and Isaac Catron, the two sons, got appellant, William Parker, to bid in the land for them at the execution sale. The amount of the debt was between $500 and $600. John H. Catron afterwards redeemed the land from Parker, and subsequently Isaac Catron died, with the title in this condition. Suit was filed to settle the estate of Isaac Catron, and his half was ordered sold in that suit for the payment of his debts. John Catron procured Parker again to buy in the land for him, which Parker did in his own name, at the price of $25. The equity of redemption was then sold, and Parker bought this for $5. The land was not redeemed, and at the end of the year Parker, over Catron's objection, caused a deed to be made to himself for the land; that is, Isaac Catron's half of the tract. John Catron then filed this suit in equity against Parker, setting up the facts, and alleging that Parker held the title in trust for him, and praying that he be required to convey the land to him; he having been all the time in the actual possession of it. The court decreed him the relief sought, and the defendant appeals.

Parker denied that he bought the land for John Catron, and denied that Catron made any arrangement with him by which he was to buy it for him, but the weight of the evidence sustains the chancellor's

conclusion. Parker was a relative as well as a near neighbor and close friend. Catron had had some trouble with his wife, and was living at home alone, boarding with Parker. Parker had gone his bond in a suit which his wife had brought against him. Parker allowed Catron after the sale to treat the land as his own. He sold timber from the place. He made an oil lease, Parker telling the lessee that Catron's title was all right; and he told several persons that he had bought the land for John, and was going to stand by him. Catron was not apprised of Parker's change of mind until after or about the time the year had expired in which the land might be redeemed. Parker then declined to receive from Catron the $30 which he had paid. On the question of fact, while the evidence is somewhat conflicting, we can not disturb the chancellor's finding.

It is earnestly maintained that the agreement of Catron, being in parol, is within the statute of frauds. In Stark's Heirs v. Cannaday, 3 Litt., 399, 14 Am. Dec., 76, it was held that where an agent verbally employed to purchase land for his principal does so with the money of the principal, but makes the contract in his own name, a trust for the principal will result by implication, which is not affected by the statute of frauds. The reason given by the court for its conclusion is as follows: "For the statute only forbids the enforcement of a trust or equity created by contract, and not such as results from the nature of the transaction by implication of law." The doctrine of this case was followed in Lisle v. Lisle's Administrator, 4 Ky. Law Rep., 990, where the purchase was made at a judicial sale by one for another who paid the consideration. Appellant insists that these cases are not in point, because here appellee did not pay the consideration. Still, he offered to pay it, and was kept from paying

it by the act of appellee, who refused to accept it, and insisted on having the deed made to himself. The payment of the consideration by the principal is not the only state of case in which the rule applies. The rule rests upon the idea that the purchaser holds the land in trust for his principal. It is the constructive trust which underlies the rule. In Pomeroy's Equity, sec. 1030, it is said: "All trusts by operation of law consists, therefore, in a separation of the legal and equitable estates; one person holding the legal title for the benefit of the equitable owner, who is regarded by equity as the real owner, and who is entitled to be clothed with the legal title by a conveyance. Certain instances of this class are trusts sub modo. They are termed 'trusts' because the beneficial owner is entitled to the same remedies against the holder of the legal title which are given to the beneficiary under a true trust. All trusts which arise by operation of law are, as the name indicates, excepted from the requirements of the statute of frauds." Again, in section 1044, it is said: "Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when the legal title to the property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility of his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed 'trusts in

invitum;' and this phrase furnishes a criterion generally accurate and sufficient for determining what trusts are truly 'constructive.' '' Constructive trusts are held not within the statute because they rest in the end on the doctrine of estoppel, and the opera-tion of an estoppel is never affected by the statute of frauds. (Morris v. Shannon, 75 Ky., 89.) If Parker had not misled Catron, he might have gotten some one else to buy in the land for him; and if Parker had not let him deal with the land as his own, and held himself out as having bought it in for him, he might still have protected himself. To permit Par-ker to shield himself behind the statute of frauds, and keep the land, would be to sanction a fraud and deny effect to familiar principles of estoppel. In Martin v. Martin, 55 Ky., 8, Draffin bought in Martin's land at a commissioner's sale for him under a verbal agreement to this effect, when there was no right of redemption at such sales. It was held that Draffin held the land in trust for Martin, and that the trust was not affected by the statute of frauds. The same conclusion was reached in Miller v. Antle, 65 Ky., 407, 92 Am. Dec., 495, and Green v. Ball, 67 Ky., 586. It is insisted that these cases are not in point, for the reason that Catron here did not own the land. But he had it in possession and was living upon it. He had a lien on it for the money which he had paid to redeem it from the execution sale. The arrangement with Parker was made to protect his interest, and created no less a constructive trust when his interest in the land was equitable than if he had held the legal title. It would be no less a fraud on Catron to per-mit Parker to keep the land in the one case than the other. The estoppel arises equally in either case. An agency to sell land may be created by parol. (Talbot v. Bowen, 8 Ky., 437, 10 Am. Dec., 747; Isaacs v.

Gearheart, 51 Ky., 231.)  A verbal partnership to buy
land is also not within the statute.  (Garth v. Davis
& Johnson, 120 Ky., ——, 85 S. W., 692, 27 Ky. Law.
Rep., 505.)

Catron was allowed to testify to certain transactions
with his brother Isaac, who was dead, and to prove
in his own behalf. statements made by him not in the
presence of Parker.  This was error.  He could not
testify for himself as to matters occurring with his
dead brother, nor could he make evidence for him-
self.  But if we eliminate all this, and regard only
the testimony admittedly competent, the clear weight
of the evidence sustains the chancellor's conclusion.
So the error in the admission of evidence was harm-
less.

Judgment affirmed.