[L. A. No. 8550. In Bank.—August 12, 1927.]

LILLIE T. WEBB, Respondent, v. ADELE VERCOE, Appellant.

[1] CONTRACTS—TRUSTS—FORECLOSURE SALE—REDEMPTION.—Where the facts of a case warrant the conclusion that the written declarations of the defendant were to the effect that plaintiff need not attempt to redeem her property from a mortgage foreclosure sale, but could rely upon the defendant to furnish the money to purchase at such sale and to thereafter take a sheriff's deed, treating the transaction as a loan and holding the legal title as security for its repayment with interest at seven per cent per annum, and that plaintiff should have an indefinite time within which to repay defendant and secure thereby title to the property, the transaction may be characterized as creating a resulting trust, and also as an agreement to permit plaintiff to redeem property from foreclosure sale after expiration of the statutory period therefor.

[2] ID.—CONTRACTS—LOAN—RESULTING TRUST.—Such a transaction is properly denominated a loan by defendant to plaintiff, with the legal title of the property as security, which need not be in writ-

---

2. Constructive fraud as creating constructive trust in land, note, 115 Am. St. Rep. 791. Oral agreement to buy land at judicial sale for another as creating resulting trust, note, 42 A. L. R. 15. See, also, 18 Cal. Jur. 146. Parol agreement with person interested in land that purchaser will buy land at judicial sale and hold for benefit of promisee as implied trust enforceable in equity, notes, 5 Ann. Cas. 173; 12 Ann. Cas. 542; Ann. Cas. 1918E, 309. See, also, 26 R. C. L. 1244.

ing, and the repudiation of the relation by the defendant constitutes a legal fraud giving rise to a resulting trust in the property.

[3] Id.—Redemption After Statutory Time—Nature of Proceeding—Interest.—In such a case the proceeding to redeem the property after the statutory period is an equitable one and bears no relation whatever to a proceeding under section 702 of the Code of Civil Procedure; and a court of equity may, therefore, in its decree fix such terms for redemption as it may think proper and is not governed by the provisions of said section; and the court is not required to allow interest at the rate of one per cent per month from date of sale to date of commencement of the action.

[4] Id. — Right to Redeem — Right to Claim Resulting Trust.—In such a case the plaintiff as judgment debtor has the right to redeem, and as the equitable owner the right to insist upon a resulting trust.

[5] Id.—Express Trust—Perpetuity.—In such a case neither the rule pertaining to express trusts nor the law against perpetuities is involved in the action, nor is the doctrine of "clean hands."

---

(1) 33 C. J., p. 1151, n. 17; 39 Cyc., p. 160, n. 62, p. 571, n. 2. (2) 39 Cyc., p. 108, n. 43. (3) 42 C. J., p. 398, n. 27. (4) 42 C. J., p. 393, n. 21; 39 Cyc., p. 112, n. 55. (5) 21 C. J., p. 190, n. 75; 30 Cyc., p. 1482, n. 81.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walter J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. Chamber and Hunsaker, Britt & Cosgrove for Appellant.

Carl H. Sturzenacker for Respondent.

PRESTON, J.—This is an appeal from a judgment in favor of plaintiff declaring a resulting trust in real property standing in the name of defendant.

By the amended complaint it is alleged that on November 3, 1917, and for a long time prior thereto, plaintiff was the owner and in possession of certain real property "subject to a first mortgage in the principal sum of $11,000, and to a

---

3.　See 18 Cal. Jur. 590, 603.

4.　Who may redeem from mortgage, note, 21 Am. St. Rep. 245. See, also, 18 Cal. Jur. 591; 19 R. C. L. 638.

second mortgage in favor of the defendant in the principal sum of $5000"; that on said date the owner of said first mortgage began an action to foreclose same; that defendant proposed to plaintiff, who was her sister and who was unable to pay said encumbrances, that "said foreclosure suit be allowed to proceed to judgment, and that the property be sold . . . and that defendant would purchase the property for the benefit of plaintiff, and that the amount of said purchase price should be considered as a loan by the defendant to the plaintiff, and that plaintiff should remain in possession and the management of the said property, and should improve the same, and should receive from the income derived from the property a wage sufficient to enable her to live, and that the balance of the income, after payment of necessary expenses, should be turned over by the plaintiff to defendant, to be applied on account of the said loan, and that the defendant would, as soon as the amount of the said loan and interest at seven per cent (7%) per annum was paid by the plaintiff to the defendant, either from the proceeds of said property or otherwise, whether it took five (5) or more years, convey the title of said property to the plaintiff, and that the defendant would hold the title to the said property in trust for the plaintiff, and as security for said loan, until such time as the said loan and interest were repaid, as hereinbefore alleged; that plaintiff having all confidence in the defendant, and relying upon the sisterly love and affection of the defendant, did accept the said proposal of defendant, and did permit the said foreclosure suit to proceed without making other effort to raise the money to redeem said property from such foreclosure."

By the answer this agreement was denied, but the court found its existence in practically the identical words of the complaint. The complaint also contained the allegation "that the legal title to said property on November 3rd, 1917, stood in the names of the plaintiff's three daughters, in trust for the benefit of plaintiff, who was the real owner thereof." This allegation, which was denied also, the court found to be true.

On stipulation of the parties the court appointed a referee to state the account between them, and his report was to the effect that the amount due defendant from plaintiff was

the sum of $27,801.25.  Thereafter the court gave its judgment declaring that defendant held the title to said real property involved in trust for plaintiff, and that upon payment by plaintiff to defendant of said sum of $27,801.25 within ninety days after entry of the judgment, defendant should execute and deliver to plaintiff a good and sufficient deed of conveyance to said property free and clear of all encumbrances; that in case of her failure to do so, the clerk of the court be made a commissioner to execute such deed, the deed so executed by the clerk to operate as a transfer to plaintiff; that upon and after payment by plaintiff of said sum to defendant and a deed by said defendant or said clerk to plaintiff, defendant be restrained and enjoined from thereafter asserting any right, title, or interest in or to said property, and that plaintiff be entitled to re-enter possession of the premises, and for costs of suit.

The facts show that on the third day of November, 1917, a suit to foreclose the first mortgage on said property was filed and thereafter the defendant, who held the junior mortgage thereon, also began an action to foreclose it; that a combined decree of foreclosure and sale was made and a sale under said foreclosure occurred on the twenty-fourth day of March, 1919, at which time defendant became a purchaser for the purchase price of $20,030.35; that thereafter and on the twenty-fifth day of May, 1920, defendant received a sheriff's deed to the property.

At the outset it must be stated that defendant urges that the evidence does not furnish proper legal support for the findings of fact made by the court.  It is unnecessary to dwell at length upon the evidence, but we will set forth the following quotations gleaned from various letters which passed between plaintiff and defendant during the years 1918, 1919, and 1920:

In a letter dated April 18, 1918, plaintiff wrote defendant, who was in Europe at the time, as follows: "You take the ranch over in your name so that no one can touch it and let me manage it at no expense to you.  Rendering you a complete statement & account of all moneys spent by me on it and money made from produce, hogs, rabbits, etc.  Pay all the money I can make into your bank to your credit until I gradually reduce the mortgages.  I just see my way clear to make good money this year in hogs.  When one

stops to consider I have done very well to have held my own this long and not lost everything. At least I have a fine deep well pumping plant that cost $3000 practically all paid for, will have on May 11th, worth many thousands to that land. If Sentous forecloses this fine property is sure to be lost as it is impossible to renew mortgages at this time. Much expense can be also saved by your taking up the mortgage right now. I pray and trust you will save the place to enjoy yourselves some day as much as anyone else.''

To the above letter defendant replied: '' . . . Upon receipt of your letter I cabled Mr. Harris (attorney for defendant) as follows:—'Save property Deed to me, Mrs. Webb given management, Revert to her repayment debt. . . . ' . . . ''

Again she wrote plaintiff: ''I am glad to also hear that you are living out on the Ranch & your account of the development of the trees etc also of local conditions is most interesting.''

Again: ''You are doing the only possible thing to bring you that success, & that is by living on the place & giving everything your personal attention & get out of debt as quickly as you can. That I agree with you is the best way to make money & gain success.''

Again: ''I note all you say re your plans etc also hope for the discovery of oil. I pray with you—that all may come out happily in the end. . . . To save the Ranch exhausts my resources—as you can imagine. . . . ''

Again: ''Now please put all your energy & thought into making that ranch a success & at the same time provide a good and comfortable home for yourself & your daughters—until such time as you can buy it back.''

Lastly, and after the property had been purchased, defendant wrote: ''If you read over my former letters you will see that I told you that you are to have every chance of redeeming your property upon payment of what I have spent in buying it in—which was to save it for you & your children if possible. If years go by it will be the same with the added interest—so I don't think you need worry yourself as to my intentions. My happiness will be to see you & your children in possession—free of debt.''

[1]   The oral testimony given at the trial was also of such a character that the court, viewing the whole case, was well warranted in concluding that the written declarations of the defendant were to the effect that plaintiff need not attempt to redeem her property from the foreclosure sale, but could rely upon the defendant to furnish the money to purchase at such sale and to thereafter take a sheriff's deed, treating the transaction as a loan and holding the legal title as security for its repayment, this too upon the terms found by the court, to wit: interest at seven per cent per annum; and that plaintiff should have an indefinite time within which to repay defendant and secure thereby title to the property.

Counsel for respondent contends that the transaction between the parties forms an express trust, and that in the correspondence between them may be found the full requirements of the written declaration thereof required by the statute.   He disclaims that it is an action to redeem from a mortgage foreclosure sale after the statutory limit for redemption upon a showing of grounds for equitable relief and also disclaims that the transaction was one creating a resulting trust in real property.

Appellant, on the other hand, spends her efforts in attempting to show that the transaction was not one creating an express trust, and that the writings are insufficient to support such contention.   We find it unnecessary to dwell upon this particular phase of the doctrine of trusts, for we have reached the conclusion that the transaction may be properly characterized both as conduct and statements, oral and written, out of which the law creates a resulting trust, and also as an agreement to permit plaintiff to redeem property from foreclosure sale after expiration of the statutory period therefor.   Indeed, the two remedies are practically the same.   We regard the issues as framed by the pleadings and as submitted to the court on the trial to be amply sufficient under section 580 of the Code of Civil Procedure to warrant either or both of these conclusions. In *Bradley* v. *Bradley,* 165 Cal. 237, 240, 241 [131 Pac. 750], it is said:

''It is a matter of indifference under this pleading whether it be said that plaintiff is seeking to enforce a voluntary trust which has been repudiated by the trustee or

whether it is seeking to enforce an involuntary trust aris-
ing in law from that repudiation. In its creation the trust
was voluntary, and however at variance it may be thought
to be with the mandate of the statute as to the creation of
trusts in land, it is of such character that equity will not
permit the trustee to take advantage of the existing confi-
dential relations in which the trust itself originated and by
repudiating the trust obtain an unconscionable advantage
over the confiding trustor and beneficiary. So numerous
are cases upon this subject that it must suffice to refer to
*Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430];
*Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506]; *Jones* v.
*Jones,* 140 Cal. 587 [74 Pac. 143]; *Kimball* v. *Tripp,* 136
Cal. 631 [69 Pac. 428]."

It is not controlling that respondent disclaims the trans-
action to be what we think it is, for we are taught that
oftentimes the right hand may not "know what the left
hand doeth." [2] Testing the sufficiency of the transac-
tion as one creating a resulting trust and, therefore, one
which need not be in writing, we are able to appeal to a
long line of decisions in this state to the effect that a trans-
action such as the one here under consideration will be
properly denominated a loan by defendant to plaintiff, and
a taking by defendant of the legal title to the property in
controversy as security for repayment thereof, and the re-
pudiation of this relation by the defendant a legal fraud
giving rise to a resulting trust in the property (Civ. Code,
sec. 853).

In the case of *Sandfoss* v. *Jones,* 35 Cal. 481, 487, a
verbal agreement was made by two of several judgment
creditors with an execution debtor to purchase all of the
property involved at the sheriff's sale for the benefit of said
execution debtor, and to advance their own money, if
necessary for that purpose, and when they should have re-
paid themselves for said advances, with interest, out of
the rents, issues, and profits derived from the property,
to reconvey the portions unsold to the execution debtor.
The court there said:

"It is well settled that where one purchases and pays
for property with his own money, and takes the deed in
the name of another, a trust by operation of law is raised,
and the Statute of Frauds does not apply. . . .

"If, however, we consider the averments of the complaint in the light which is most favorable to the defendants, we have a verbal agreement on their part with an execution debtor, whose land is about to be sold by the Sheriff, to purchase it with their own funds, and hold it for his benefit. Such an agreement is equivalent to a loan of the money and a taking of the title as security for its repayment; or an agreement by one person to purchase land for the benefit of another, under circumstances which would amount to a fraud upon the latter, if the former was allowed to repudiate his promise, and, therefore, not within the Statute of Frauds.

"In relation to such a contract the High Court of Errors and Appeals of the State of Mississippi said: 'It is not now an open question that when a party agrees before the sale to purchase property about to be sold under an execution against a party, and to give such party the benefit of the purchase, that the agreement is binding and will be enforced. The defendant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution, and thus preventing a sale of his property. It will not do to say that the party promising was moved merely by friendly or benevolent considerations, and may, therefore, at his option, decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible in the same spirit in which he originally contracted.' "

In the case of *Brown* v. *Spencer,* 163 Cal. 589, 593 [126 Pac. 493], defendant loaned plaintiffs the amount necessary for them to complete the purchase of certain lands, the lands, however, being conveyed to her as security for the money so loaned, upon the understanding that she should hold same in trust for said plaintiffs until a reconveyance was demanded by them, or the land sold and the money repaid to her, plaintiffs at all times having possession of the property. The court said: "The substance of the cause of action thus set forth is that the consideration for the transfer of the land was paid by Frank Spencer, John Spencer, and the plaintiffs, and the conveyance thereof was made to Eleanor Spencer. In such cases a trust is presumed to result in favor of the persons paying the con-

sideration, and the grantee will be declared a trustee for them as to the land. (Civ. Code, sec. 853.) The loan of the money by Eleanor to the purchasers was, in legal effect, a transfer of the money to them. The consequence was that when the money was paid in settlement of the purchase price, it was their money, and not Eleanor's, that was so paid. The fact that it was paid directly to the vendors by her agent does not alter the legal effect of the transaction. The transfer being made to Eleanor, she became a trustee holding title to the land for the other interested parties. No writing was necessary to create a trust of this character. It is a trust which the law implies from the facts of the case and may be created without writing. The case falls exactly within the rule of the aforesaid section of the Civil Code. (*Campbell* v. *Freeman,* 99 Cal. 546 [34 Pac. 113]; *Hidden* v. *Jordan,* 21 Cal. 99; *Millard* v. *Hathaway,* 27 Cal. 139; *Sandfoss* v. *Jones,* 35 Cal. 486; *Walton* v. *Karnes,* 67 Cal. 255 [7 Pac. 676]; *Ward* v. *Matthews,* 73 Cal. 16 [14 Pac. 604]; *Hellman* v. *Messmer,* 75 Cal. 170 [16 Pac. 766]; *Moultrie* v. *Wright,* 154 Cal. 523 [98 Pac. 257]; *Title etc. Co.* v. *Ingersoll,* 158 Cal. 491 [111 Pac. 360].) Upon the facts alleged the plaintiffs were entitled to the relief prayed for.''

In the case of *O'Rourke* v. *Skellenger,* 169 Cal. 270, 272 [146 Pac. 633], defendant agreed with the heirs of a deceased mortgagor that he would advance money and buy the land involved at the foreclosure sale, thereafter holding it in trust for the benefit of the estate and the heirs. The court said: ''The decisions of this court establish the proposition that, under the circumstances stated, the defendant will be held bound as trustee of the land for the benefit of the heirs of McCabe, and that in equity he is entitled only to be reimbursed for his outlays, with interest, with a lien on the land to secure him the repayment thereof. The consideration for the purchase of the mortgage from Forster, and of the land at the foreclosure sale, is, under the circumstances stated, deemed to have been paid by the heirs, and a resulting trust is created accordingly. The rule is stated in *Brown* v. *Spencer,* 163 Cal. 592, 593 [126 Pac. 493], and many of our decisions in which may be found illustrations of the applications of the rule, are there cited.''

In the case of *Parker* v. *Catron,* 120 Ky. 145 [117 Am. St. Rep. 575, 85 S. W. 740, 741, 742], defendant, pursuant to an oral agreement, purchased at a judicial sale for plaintiff land of which plaintiff was in possession, and in which he owned an interest. The court said: "It is earnestly maintained that the agreement of Catron, being in parol, is within the statute of frauds. . . . Constructive trusts are held not within the statute because they rest in the end on the doctrine of estoppel, and the operation of an estoppel is never affected by the statute of frauds. (*Morris* v. *Shannon,* 12 Bush (75 Ky.), 89.) If Parker had not misled Catron, he might have gotten some one else to buy in the land for him; and if Parker had not let him deal with the land as his own, and held himself out as having bought it in for him, he might still have protected himself. To permit Parker to shield himself behind the statute of frauds, and keep the land, would be to sanction a fraud and deny effect to familiar principles of estoppel. In *Martin* v. *Martin,* 16 B. Mon. (55 Ky.) 8, Draffin bought in Martin's land at a commissioner's sale for him under a verbal agreement to this effect, when there was no right of redemption at such sales. It was held that Draffin held the land in trust for Martin, and that the trust was not affected by the statute of frauds. The same conclusion was reached in *Miller* v. *Antle,* 2 Bush (65 Ky.), 407 [92 Am. Dec. 495], and *Green* v. *Ball,* 4 Bush (67 Ky.), 586. It is insisted that these cases are not in point, for the reason that Catron here did not own the land. But he had it in possession and was living upon it. He had a lien on it for the money which he had paid to redeem it from the execution sale. The arrangement with Parker was made to protect his interest, and created no less a constructive trust when his interest in the land was equitable than if he had held the legal title. It would be no less a fraud on Catron to permit Parker to keep the land in the one case than the other. The estoppel arises equally in either case. An agency to sell land may be created by parol. (*Talbot* v. *Bowen,* 1 A. K. Marsh. (8 Ky.) 437 [10 Am. Dec. 747]; *Isaacs* v. *Gearheart,* 12 B. Mon. (51 Ky.) 231.) A verbal partnership to buy land is also not within the statute. (*Garth* v. *Davis & Johnson,* 120 Ky.

106 [85 S. W. 692], 27 Ky. Law Rep. 505 [117 Am. St. Rep. 571].)''

Perry on Trusts and Trustees, sixth edition, volume 1, section 171, pages 268, 269, gives the situation here in an illustration of the doctrine as follows: ''Thus, where one buys land at an execution sale, or sale under a trust deed, under an agreement with the debtor that the latter may redeem, the purchaser holds in trust; it would be a fraud to allow him to repudiate the contract. (a) Mere declarations and admissions of the party to be charged accompanying the transfer of title have been held sufficient to raise a trust.''

Treating the transaction as one to redeem the property from the foreclosure sale after expiration of the statutory period of redemption, we find the principles involved fully discussed in the three Bunting cases, from which the following quotations are taken:

The first case, *Benson* v. *Bunting,* is reported in 127 Cal. 532 [78 Am. St. Rep. 81, 59 Pac. 991]. Plaintiff in an action to foreclose a mortgage employed defendant's attorneys to make the bid at the sale, and misrepresented through them to defendant that he had twelve months in which to redeem. Defendant, relying on the truth of the representations, neglected to redeem within the six months statutory period, but tendered a full redemption within twelve months, which tender was refused. It was held that said refusal operated as a fraud upon defendant; that he was entitled to equitable relief and plaintiff was estopped to insist upon the statutory period on the ground that defendant was lulled by his assurances into a false security, notwithstanding the assurances were not in writing, and were made without consideration. In the second case, *Benson* v. *Bunting,* 141 Cal. 462 [75 Pac. 59], the above decision was upheld notwithstanding there was no specific finding therein made that plaintiffs offered to redeem. In the third action, *Bunting* v. *Haskell,* 152 Cal. 426, 429 [93 Pac. 110], which involved questions in connection with tender of the money necessary to effect redemption within thirty days under the judgment rendered in said above-mentioned second action, the court said:

''But was the redemption authorized by the decree in *Benson* v. *Bunting* the redemption provided for in section

702 et seq. of the Code of Civil Procedure? As a general rule, the redemption allowed by statute cannot be effected after the expiration of the statutory period allowed therefor. (*Tilley* v. *Bonney,* 123 Cal. 118, 123 [55 Pac. 798]; *Davidson* v. *Gaston,* 16 Minn. 202, 230.) It is well settled, however, that courts of equity may, upon a proper showing of fraud, mistake or other circumstances appealing to the discretion of the chancellor, relieve judgment debtors whose property has been sold on execution from a failure to redeem within the statutory period. In such cases equity 'in its discretion will grant relief on a proper bill, and allow the judgment debtor to redeem after the expiration of the redemption period.' (17 Cyc. 1330; *Graffam* v. *Burgess,* 117 U. S. 180 [29 L. Ed. 839, 6 Sup. Ct. Rep. 686]; *Branch* v. *Foust,* 130 Ind. 538 [30 N. E. 631]; *Smith* v. *Huntoon,* 134 Ill. 24 [23 Am. St. Rep. 646, 24 N. E. 971].)''

To the same effect see *Wallace* v. *Dodd,* 136 Cal. 210, 211 [68 Pac. 693].

[3] The evidence is sufficient to warrant the conclusion that defendant agreed to extend the period of redemption beyond the time fixed by the statute, but in this behalf she earnestly insists that the court should have fixed the interest charge at one per cent per month from date of sale to date of commencement of this action. In this she is in error, for the proceeding to redeem after the statutory period is an equitable one and bears no relation whatever to section 702 of the Code of Civil Procedure. A court of equity may, therefore, in its decree fix such terms for redemption as it may think proper and is not governed by the provisions of said section. See three Bunting cases hereinbefore cited, especially *Benson* v. *Bunting,* 141 Cal. 462, 465 [75 Pac. 59], where it was said:

"Appellant contends that the court erred in fixing the amount of interest which respondents must pay in order to redeem, and that more interest should have been required. The court allowed two per cent per month interest during the six months statutory period of redemption, and thereafter the legal rate of interest of seven per cent per annum. The contention of appellant is that two per cent per month should have been allowed until the time of actual redemption under the judgment; but this contention is not maintainable. Appellant having denied the right of re-

demption and prevented the exercise of it, cannot recover the extraordinary interest which respondents would have avoided if they could have exercised their right of redemption. Indeed, respondents argue with great force that they should not have been required to pay the seven per cent per annum interest, or any interest at all, during the long period after the repudiation of their right to redeem; but respondents are not appealing and we cannot consider any alleged error against them. However, the appellant, if the case was rightfully decided against him in other respects, has no just reason to complain as to the amount of interest allowed him.''

See, also, *Bunting* v. *Haskell, supra,* where it is said: ''But such redemption, when authorized by the decree of a court of equity, finds its support, not in the provisions of the statute allowing redemption within a given time as a matter of right, but in the provisions of the decree granting to a party the privilege of redeeming upon terms fixed by the court as just.''

[4] The point is also made that inasmuch as plaintiff owns only the equitable title to the estate she may not assert either the right to redeem nor the claim to a resulting trust in the real property. This contention, however, is without merit, as a judgment debtor has a right to redeem (Civ. Code, sec. 701). And as the equitable owner of the property plaintiff has the right to insist upon a resulting trust. (*Parker* v. *Catron, supra.*)

[5] Neither the rule pertaining to express trusts nor the law against perpetuities is involved in this action. The same may be said about the doctrine of ''clean hands.'' As above stated, treating the transaction either as a resulting trust or as an action in equity to redeem from judicial sale, the pleadings, findings, judgment, and evidence are all amply sufficient.

Judgment affirmed.

Curtis, J., Waste, C. J., Shenk, J., Seawell, J., Langdon, J., and Richards, J., concurred.

Rehearing denied.

Shenk, J., voted for a rehearing.