[Civ. No. 3905.   Third Appellate District.—October 22, 1929.]

W. H. CROZIER et al., Respondents, v. FLORA SOQUEL, Appellant.

D. Joseph Coyne for Appellant.

Charles R. Morfoot and Wm. S. White for Respondents.

FINCH, P. J.—The complaint alleges that, for a valuable consideration, the defendant agreed to purchase for the plaintiffs the land described in the complaint and to pay the purchase price thereof "for and on behalf of said plaintiffs"; that, thereafter, "without the knowledge or consent of said plaintiffs, the said defendant did procure and purchase said property and . . . obtained, without the knowledge or consent of said plaintiffs, or without at any time informing said plaintiffs of said procurance, a deed, . . . granting and conveying all right, title and interest in and to said property to herself, said defendant"; and "that said property is now of the value of $3,000." The prayer is for a judgment compelling the defendant to convey the property to the plaintiffs, "or in lieu thereof give plaintiffs judgment for the reasonable value of said property."

The defendant did not demur to the complaint, but answered, denying that she agreed to purchase the property for the plaintiffs, alleging that she purchased it for herself, and admitting that it is of the reasonable value of $1200.

The court found the foregoing allegations of the complaint, except as to value, to be true; that the plaintiffs agreed to pay and the defendant to accept $50 for her services in the transaction; that the defendant had sold the

land "to innocent third parties for the sum of $1,000, and thereby placed it out of her power to convey to plaintiffs said lands"; that the reasonable value of the land is $1200; and "that said defendant in said transactions was acting as the agent for plaintiffs, and that defendant became and was a resulting trustee or trustee by operation of law, holding said lands in trust for plaintiffs." Judgment was entered in favor of the plaintiffs for the difference between the reasonable value of the land, as found by the court, and the amount which the defendant had expended in the purchase thereof. The defendant has appealed from the judgment.

The findings of the court are amply supported by evidence. Both of the plaintiffs testified that the defendant had agreed to purchase the property for them and their testimony was corroborated by that of several other witnesses. The defendant's testimony to the contrary is not corroborated. The testimony in support of the findings is too long to be given in detail, but the parts thereof hereinafter quoted show the nature of the transactions between the parties. Mrs. Crozier testified: "My husband came home and he said, 'I see the lot back of us is for sale.' Mrs. Soquel was at my house at the time, and we walked down and talked about it. I says, 'Mrs. Soquel, do you want this lot?' She says, 'No, you couldn't give me any more.' . . . I says, 'I think I will buy this lot. . . . I will go to Mr. Jones and borrow the money.' She says, 'No, Mrs. Crozier, let me let you have the money, and I will let you have it for $50.' I says, 'All right, Mrs. Soquel' . . . (The next day) I talked to Mr. Reynolds (an agent authorized to sell the lot) and told him she was coming down with the money and I would take the lot, and as I came out the door I met Mrs. Ballinger. . . . Mrs. Ballinger and I went up to Mrs. Soquel's house. . . . Mrs. Ballinger said, 'Mrs. Soquel, Mrs. Crozier can have that lot for $450 and why should you pay Mr. Reynolds $500?' . . . Mrs. Soquel said, 'I will go down and see Mr. Reynolds, and see if he will agree to take the $450, the same as the other agent,' and she went down. . . . After she came out of Mr. Reynolds' office, . . . Mrs. Soquel stated that Mr. Reynolds wanted $500. . . . Mrs. Ballinger said, 'Well, we will go in and see Mr. Phelps' (another agent), and they went in to see Phelps. He wanted so

much money and she purchased the lot." The witness
further testified that the original agreement was that the
defendant would "loan me the money to buy the lot." The
court asked her, "Was there any understanding that she
would go down and buy it for you?" The witness answered,
"There was later when she started as my agent to town."
This answer evidently relates to the time when the defendant,
according to the testimony of the witness, said, "I will go
down and see Mr. Reynolds and see if he will take the $450."

Mr. Crozier testified: "My wife and I both agreed that
we would give her (defendant) $50 for the use of that
money until such time as this deed passed through escrow.
As soon as the title had been cleared up by the title com-
pany, then we could go to Mr. Jones and present this deed
and also our other lot and be ample security to get a loan.
. . . After Mrs. Ballinger and her had been to the city, . . .
(the latter) told my wife, 'Well, you got the lot.' "

There is other testimony to the effect that the defendant
stated that she had purchased the property for the plaintiffs
and that she was to receive $50 for the use of her money
"until the papers came through escrow." William Jones
testified that, prior to the transactions stated, he had prom-
ised Mrs. Crozier to loan her the money to buy the lot in
question, that "some time later . . . she came in and she said
that she had got the money from Mrs. Soquel, and I told her
whenever their escrow was finished . . . I would give them
the money. . . . Mrs. Crozier and Mrs. Soquel came in some
time later and I told them that when they were ready to
make their deed, bring it up to the office and I would pay
them $500." The defendant testified that the property "was
worth $1200 when I bought it."

The facts proved and found are such as clearly to show
a resulting trust. The following language of a recent deci-
sion is particularly applicable to such facts:

"Testing the sufficiency of the transaction as one creating
a resulting trust and, therefore, one which need not be in
writing, we are able to appeal to a long line of decisions in
this state to the effect that a transaction such as the one here
under consideration will be properly denominated a loan
by defendant to plaintiff, and a taking by defendant of the
legal title to the property in controversy as security for
repayment thereof, and the repudiation of this relation by

the defendant a legal fraud giving rise to a resulting trust in the property." (*Webb* v. *Vercoe,* 201 Cal. 754, 760 [54 A. L. R. 1200, 258 Pac. 1099, 1101]; *O'Rourke* v. *Skellenger,* .169 Cal. 270 [146 Pac. 633]; *Brown* v. *Spencer,* 163 Cal. 589 [126 Pac. 493].)

Much of appellant's argument is built upon the theory that this is an action for specific performance of a contract to sell real estate. It seems clear, however, that the action is one to enforce a trust. (25 Cal. Jur. 234; *Bacon* v. *Grosse,* 165 Cal. 481, 492 [132 Pac. 1027].) It is contended that the complaint does not state a cause of action, that the plaintiffs were guilty of laches and that the defendant's promise was not in writing and is therefore invalid. The contention last mentioned and the further one that the evidence is insufficient to warrant the findings and judgment are disposed of by what has already been said. As said by the trial court, "the complaint is inartificially drawn, but there is sufficient stated therein to apprise the defendant of the nature of the action." (25 Cal. Jur. 232, 242.) It not only appears that there has not been a miscarriage of justice (Const., art. VI, sec. 4½), but that the judgment rendered does exact justice between the parties.

It appears that the property was conveyed to the defendant about March 30, 1923. She sold it on May 7, 1923, for $1,000. This action was commenced May 1, 1925. It does not appear that the delay of the plaintiffs in bringing suit has in any manner resulted in injury or prejudice to the defendant. She wrongfully sold the property in a few weeks after it was conveyed to her and the court properly held her liable for the value thereof admitted by the answer and which the defendant testified was its value when it was conveyed to her. (*Price* v. *Reeves,* 38 Cal. 457, 461; *Clapp* v. *Vatcher,* 9 Cal. App. 462, 467 [99 Pac. 549].) "There is no basis for a contention that the plaintiff has been guilty of laches where the rights of third persons are not involved, and the situation of the defendant has not been materially changed by reason of the plaintiff's delay in asserting his rights." (25 Cal. Jur. 264.)

Since the defendant had put it beyond her power to convey the legal title to the plaintiffs, it would have been an idle act for them to have tendered the amount expended by the defendant in obtaining such title. By her wrongful act,

she became liable for a mere money demand, the difference between the value of the property and the amount expended by her. It was not necessary for the plaintiffs to show adequacy of consideration or the inadequacy of a remedy at law. (25 Cal. Jur. 229.) Neither was it necessary to prove a demand before suit. The defendant's answer and her testimony given at the trial show that she would not have complied with such a demand. Under such circumstances no demand is required. (25 Cal. Jur. 229.) The other contentions of the appellant are not deemed to have sufficient merit to warrant a discussion thereof.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.