[Civ. No. 8333. First Appellate District, Division One.—August 2, 1933.]

WILLIAM L. PENZINER, Appellant, v. WEST AMERICAN FINANCE COMPANY (a Corporation) et al., Respondents.

Bronte M. Aikins and Oliver B. Wyman for Appellant.

Orrick, Palmer & Dahlquist, Christopher M. Jenks, John A. Sinclair, A. Don Duncan, Knight, Boland & Riordan and Courtney L. Moore for Respondents.

GRAY, J., *pro tem.*—Three demurrers, special and general in form, were interposed to each of the four counts of the third amended complaint respectively by (1) West American Finance Company (hereinafter called the finance company), (2) Pacific States Savings & Loan Company (hereinafter called the loan company) and (3) R. T. Harper, C. A. Gibson, J. E. Scully and E. W. Milburn jointly and separately. All demurrers were sustained by an order, general in form, which did not specify the ground of the ruling nor grant leave to amend. Two days later a judgment, reciting that the court found the complaint did not state a cause of action, was rendered in favor of defendants for their costs. Plaintiff appeals from the judgment, claiming that the demurrers were erroneously sustained.

The following general rules govern our consideration of counsels' arguments. ■ If a demurrer is well taken as to any of the grounds stated therein, the order sustaining it must be affirmed, irrespective of whether the order states no or an erroneous ground therefor. (*Haddad* v. *McDowell*, 213 Cal. 690 [3 Pac. (2d) 550] ; *Burke* v. *Maguire*, 154 Cal. 456 [98 Pac. 21].) ■ Section 452 of the Code of Civil Procedure commands that a complaint be liberally construed when passing upon a demurrer thereto. (*Terry Trading Corp.* v. *Barsky*, 210 Cal. 428 [292 Pac. 474, 475].) Reference cannot be made to superseded complaints to explain, vary, contradict, weaken or strengthen the allegations of the last complaint. (*Johnson* v. *Powers*, 65 Cal. 179 [3 Pac. 625] ; *Dougall* v. *Schulenberg*, 101 Cal. 154 [35 Pac. 635] ; *Bray* v. *Lowery*, 163 Cal. 256 [124 Pac. 1004] ; *Maddux* v. *Mora*, 99 Cal. App. 695 [279 Pac. 467].) ■ Inconsistencies between alternative counts cannot be attacked by demurrer, since each count stands on its own allegations, unaffected by those contained in other counts. (*Little* v. *Union Oil Co.*, 73 Cal. App. 612 [238 Pac. 1066].) ■ Since the effect of a demurrer is to admit all of the allegations of the complaint which are well pleaded, it must be assumed on appeal from the judgment that all of the facts are as alleged. (*Isert* v. *Riecks*, 195 Cal. 569 [234 Pac. 371].) Neither plaintiff's ability to prove the allegations of his complaint, nor seeming difficulty in making such

proof, concerns the reviewing court. (*Mox Incorporated* v. *Woods,* 202 Cal. 675 [262 Pac. 302].)

The first two counts of the complaint charge all defendants except the loan company; the last two counts charge only the loan company, R. T. Harper and C. A. Gibson. Each count alleges the facts concisely narrated in this paragraph. The finance company and the loan company were corporations, the individual defendants being directors of the former, and R. T. Harper being its president. The finance company was engaged in the business of making construction loans to owners of real property for the improvement thereof under a plan whereby it advanced the amount of such loan in payment of labor and material as the work progressed, but exacted interest monthly in advance upon the whole amount to be advanced regardless of the amount then actually advanced. The First Mortgage Bond Company (hereinafter called the broker), occupying the same office, was engaged as agent for the finance company in soliciting applications for such loans, charging borrowers a fee therefor and dividing such fee with the finance company. On August 15, 1927, plaintiff, desiring to erect on described land owned by him a nine-story class "A" apartment house, applied to the finance company for a construction loan of $150,000 to be used for such purpose, was requested by its president to procure from the broker a form of application, directed to the latter, but regularly used by the former, which application was signed and delivered to the finance company, which forthwith notified plaintiff of its approval. The application applied to the broker for a loan of $150,000 "For a term of one year at 7% interest per annum, payable monthly in advance from date of note and deed of trust, to be secured by a deed of trust on said lot," described the building to be erected and provided that the loan was to be advanced, on plaintiff's order, in installments as the building progressed, at the times and in the amounts stipulated by the broker, in payment of labor and material, and that plaintiff was to pay a premium of three per cent of the loan and to allow the broker to maintain fire insurance for the sum of $150,000. The next day plaintiff executed and delivered to the finance company his note for the principal and interest specified in the application, and to R. T. Harper and C. A. Gibson, as trustees,

his deed of trust conveying his land upon the usual trusts as security for the loan. In the usual course of construction, one year was reasonably necessary for the erection of the apartment house, and therefore progress payments would be made at such times that interest on the full amount of the loan would exceed twelve per cent on the actual sums advanced. The application was furnished for the purpose of enabling the finance company to obtain usurious interest, and at the making of the application and execution of the note and deed of trust plaintiff and defendants believed usurious interest would be paid, and the finance company intended to exact usurious interest. During the year ending August 16, 1928, the finance company advanced money in an amount which plaintiff is unable to state, but believes did not exceed $100,000. The finance company recorded, on August 17, 1928, notice of default and caused the trustees to publish notice that they would sell the property on December 31, 1928.

The first cause of action alleges the following additional facts: Before the commencement of this action, the finance company, upon plaintiff's demand, rendered him an untrue account of its advances. On or about August 16, 1928, defendants combined and conspired to defraud and deprive plaintiff of his title to land and apartment house and of his interest in the proceeds of the sale. Pursuant to the conspiracy, the finance company recorded the above notice of default, caused the above publication of notice of sale, and purportedly assigned the note to the loan company for an unknown consideration, but with the understanding that the latter would bid in the property at the sale, obtain a deed therefor from the trustees and thereafter convey the same to the former. Also, pursuant to the conspiracy, the trustees offered the property for sale as advertised, the loan company bid therefor $150,000, the trustees accepted this bid and executed and delivered to the loan company a deed for the property which acknowledged receipt of the bid in gold coin. The loan company on or about March 13, 1929, conveyed to the finance company and the latter conveyed to a third party for an unknown consideration and without first giving plaintiff an opportunity to redeem. Before the sale plaintiff received from a named person, who was ready, able and willing so to do, an offer to advance the money

necessary to pay the debt or to purchase the property at the sale for their joint account, and advised R. T. Harper of such offer. Thereupon the latter, in pursuance of the conspiracy, informed him that it would be unwise to sacrifice his equity and, without an intention of performance, represented that it would be unnecessary to carry out the offer as the title would be bid in by the finance company, held for his protection, and reconveyed at any time upon payment of his debt. Relying upon these representations, plaintiff refused the offer, abandoned all attempts to raise the money to pay the debt or to bid, and permitted the sale without any bid on his behalf. In further pursuance of the conspiracy, R. T. Harper falsely represented to prospective bidders, who otherwise would have bid at the sale, that the property was to be bought in by the finance company for the benefit and protection of plaintiff. As part of the conspiracy, the finance company and the trustees agreed with the loan company that it would bid $150,000, and the latter so did. This was the only bid. When plaintiff, surprised at the sale to the loan company, reminded R. T. Harper of his representations, the latter, in furtherance of the conspiracy, stated the loan company took title for the finance company and he would still be permitted to redeem at any time upon payment of his debt. Daily, from January 2d to 11th, both inclusive, plaintiff offered R. T. Harper to pay his debt and to redeem his property, and inquired of him the amount of such debt and time of redemption, but R. T. Harper, in pursuance of the conspiracy, rejected the offer, failed to state either amount or time, and evaded questions, and on the last day informed plaintiff he could not redeem and refused an accounting of the proceeds of the sale. The value of the property at the time of the sale was $450,000 without reference to the debt, and plaintiff has been damaged $350,000.

The first count does not contain the elements, imperfectly and not separately stated, of several causes of action as defendants respectively contend, but sets forth but one cause, which seeks the enforcement of Harper's promise that the finance company purchase the property at the sale for plaintiff's benefit and hold title thereto subject to his redemption.

■ The allegations as to the loan, the advancement thereof, the execution of the note and deed of trust, the notice of

default and sale, the sale, and plaintiff's inability to get bidders are matters of inducement necessary to a proper understanding of the wrong done plaintiff. The gist of this count is Harper's promise and its breach. (*Moropoulos* v. *C. H. & O. B. Fuller Co.*, 186 Cal. 679 [200 Pac. 601].) Any uncertainty or ambiguity in matters of inducement does not make the cause of action demurrable in those respects. (*Kraner* v. *Halsey*, 82 Cal. 209 [22 Pac. 1137].)

■ The formation and consummation of the conspiracy is adequately and properly alleged. (*Moropoulos* v. *C. H. & O. B. Fuller Co.*, supra; *Mox Incorporated* v. *Woods*, supra.) The representations of Harper were, therefore, binding upon the other defendants and each is liable for their breach. (*Mox Incorporated* v. *Woods*, supra.) Hence it is unnecessary to consider the scope of Harper's authority, as its president, to bind the finance company, or the liability of the personal defendants as its directors.

■ The purchase of the property by the loan company on behalf of the finance company, after Harper had represented that the latter would acquire title for plaintiff's benefit and hold it subject to his redemption, constituted a loan by the finance company to plaintiff of the purchase price, secured by the title, and the repudiation of this relation created a resulting trust which is not within the statute of frauds. (*Webb* v. *Vercoe*, 201 Cal. 754 [258 Pac. 1099, 54 A. L. R. 1200]; notes, 42 A. L. R. 10, 78 and 54 A. L. R. 1198.) ■ Since the conveyance to an innocent third party rendered impossible the impressing of a trust upon the property, plaintiff was entitled to recover its value less his debt. (*Price* v. *Reeves*, 38 Cal. 457.) The matter of usurious interest, which affects the amount of that debt, will be subsequently discussed. Since a demand before suit was unnecessary (*Crozier* v. *Soquel*, 101 Cal. App. 402 [281 Pac. 698]), it will be needless to discuss the sufficiency of plaintiff's offer to pay his debt. ■ An action to establish a resulting trust and to recover a money judgment instead of the trust property must be brought within four years of the repudiation of the trust. (16 Cal. Jur. 480; 25 Cal. Jur. 269, 271.) The present action was brought within ten months after such repudiation. No fact is averred from which acquiescence can be inferred or which would render granting relief inequitable. The demurrer

for laches therefore was not well taken. (*Stevenson* v. *Boyd,* 153 Cal. 630 [96 Pac. 284, 19 L. R. A. (N. S.) 525] ; *Varrois* v. *Gommet,* 43 Cal. App. 756 [185 Pac. 1001].)

The next three counts reiterate the facts common to all, as stated in paragraph three hereof. They fix the value of the property at $350,000, which would be the value of the equity under the first count, instead of $450,000, its value as given in the first count. They differ between themselves and the first count as to defendants, as above noted. They also differ among themselves as to the nature of the transaction by which the loan company acquired plaintiff's note, but otherwise in the main contain the same additional facts.

The second count alleges the following facts: On or about December 15, 1928, the finance company borrowed from the loan company $97,500 and, by way of security, pledged the plaintiff's note with the understanding that the loan company would purchase the property at the sale for the finance company, obtain a deed therefor from the trustees, hold the title in lieu of the note as security for the loan, and, upon repayment of such loan, would convey the property to the finance company. Pursuant to this understanding and under the direction of the finance company, the loan company, on behalf of the finance company, but in its own name, bid for the property the sum of $150,000 and the trustees accepted such bid, sold the property to the loan company and executed and delivered to the loan company a deed conveying that property upon the understanding that the pledge was released and that title, in lieu of the note, was to be held by the loan company for the finance company, subject to its lien for $97,500, together with interest. At the time of the sale, the finance company had not advanced in excess of $100,000 and, for the purpose of extorting interest in excess of twelve per cent per annum, had charged as advances the following sums, not in fact paid out: $10,500 for interest from August 16, 1927, to August 15, 1928; $4,500 for brokerage, $250 for inspection fee, $150 for appraisal fee and $25 for drawing papers, totaling $15,425; also $3,937.50 for interest from August 15, 1928, to December 31, 1928. The finance company had also charged, as advances on principal, certain sums not in fact made which would bring the total advances to $150,000. These facts were known to all defendants and the trustees,

with the consent of all defendants, and under instructions of the two companies, neglected to collect the amount of the bid in cash from the loan company, but credited its amount upon the note in payment of both the actual and the fictitious advances. On information and belief, plaintiff alleges that interest on the amount advanced, computed at twelve per cent per annum from date of actual advance to sale did not exceed $8,600. Through the sale and conveyance to the loan company for the finance company, plaintiff paid the latter, and the latter extorted from him for the loan, the sum of $19,362.50, which exceeds twelve per cent per annum on $100,000, the amount actually advanced. The acts of the finance company were done with the advice, consent and approval of all defendants.

The third count alleges that on or about December 15, 1928, the finance company sold and assigned to the loan company for an unknown consideration, and with knowledge of the facts, plaintiff's note. The fourth count alleges that the loan company purchased the note, after maturity, with knowledge that it was to secure advances upon a construction loan, but failed to ascertain the actual amounts advanced.

In each of the last three counts, plaintiff seeks to recover, under section 3 of the Usury Law (Act 3757, Deering's Gen. Laws) treble the amount of interest paid. This section reads as follows: "Every person, . . . who for any loan . . . shall have paid . . . any greater sum . . . than is allowed to be received under the preceding sections, one and two, may . . . recover in an action at law against the person . . . or corporation *who shall have taken or received the same* . . . treble the amount of the money so paid . . . in violation of said sections, providing *such action shall be brought within one year after such* payment. . . . " (Italics ours.) The recipient of the interest alone is liable. (See, also, 39 Cyc. 1035 and 1038.) The interest was paid to and received by the finance company alone, by the application of the amount of the bid made by the loan company at the sale to the claimed debt due to the finance company by the trustees. Obviously, since the loan company, as bidder, and Harper and Gibson, as trustees, did not receive the interest, neither of the last two counts states a cause of action. Likewise, since none of the individual defendants received the

interest, the second count does not as to them state a cause of action. ▆ Since the statute allows, for the commencement of an action, one year from date of payment (*Taylor* v. *Budd*, 217 Cal. 262 [18 Pac. (2d) 333]; *Rice* v. *Dunlap*, 205 Cal. 133 [270 Pac. 196]; *Ames* v. *Occidental Life Ins. Co.*, 210 Cal. 271 [291 Pac. 182]), which in this case was the date of sale, to wit, December 31, 1928, the filing of the original complaint on November 1, 1929, was within time.

Whether the second count states a cause of action against the finance company depends upon the sufficiency of its allegations to charge usury. The note provided for interest at seven per cent per annum monthly in advance upon the principal. The application provided that the amount of the loan was to be advanced on plaintiff's order in installments as the building progressed and in amounts stipulated by the broker, and that plaintiff was to pay a brokerage of three per cent on the amount of the loan. ▆ On its face the transaction does not appear usurious. " . . . it is always permissible to show that a transaction, ostensibly lawful, actually constituted a usurious loan and was made with intent to evade the statute. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 616 [254 Pac. 956, 255 Pac. 805, 53 A. L. R. 725].)" (*Terry Trading Corp.* v. *Barsky, supra*.) It is not sufficient to allege the conclusion that the transaction is usurious, but the facts from which usury appears must be pleaded. (*Mortgage Guarantee Co.* v. *Patch*, 116 Cal. App. 584 [3 Pac. (2d) 35]; 39 Cyc. 1049.) ▆ The exaction of a commission from the borrower by the lender's agent will render the transaction usurious if such exaction is known to and authorized or ratified by the lender. (*Niles* v. *Kavanagh*, 179 Cal. 98 [175 Pac. 462, 1 A. L. R. 831]; *Rice* v. *Dunlap, supra;* notes, 21 A. L. R. 797, 850; 53 A. L. R. 743, 755.) Since the finance company as lender required plaintiff, as borrower, to procure the application from the broker, who was its agent and who divided with it the brokerage, the brokerage, amounting to $4,500, must be considered as part of the charge for the loan. Fees for inspection, appraisal and drawing papers, totaling $425, charged for the purpose of extorting usurious interest, must also be included in the amount paid for the loan. (*Wallace* v. *Zinman*, 200 Cal. 585 [254 Pac. 946, 62 A. L. R. 1341].)

In testing a transaction for usury, interest must be computed on the actual sum advanced from date of advancement. (*Taylor* v. *Budd, supra.*) ''While the mere fact that the whole sum loaned is not drawn promptly by the borrower does not render the loan usurious, provided the whole sum was held subject to the borrower's order, yet when such a result is in accordance with an agreement made at the time of the loan, the transaction is obviously usurious.'' (39 Cyc. 959.) If the agreement contemplates that the entire loan shall be available to the borrower, mere delay in its payment to him, in the absence of intent to evade the Usury Law, does not make the loan usurious, but if, as a condition of the loan the borrower is required to leave part with the lender, interest in excess of the legal rate on the sum actually available is usurious. (Note, 12 A. L. R. 1422.)

Here, as the application provided that the loan was only available in progress installments, and the entire sum was not held subject to plaintiff's order, and an intent to evade the law is alleged, the above rule is applicable. The agreement must, in its inception, be usurious, for it cannot become so by reason of the borrower's default. (*Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287 [9 Pac. (2d) 819].) Where the excessive interest is caused by a contingency under the lender's control, or not under the borrower's control, the transaction is usurious; otherwise when the contingency is under the borrower's control. (39 Cyc. 951 et seq.) The application provided that the loan was payable in installments: (1) for labor and material as the building progressed, (2) upon plaintiff's order, and (3) in amounts stipulated by the broker. The time of payment was fixed by three factors, of which one only was controlled by the borrower.

The complaint alleges that a total of $100,000 only was advanced, but fails to specify the dates of the respective installments, which plaintiff states he does not know. Since the application provides for payment of installments on plaintiff's order, the finance company argues that he should know the date and amount of each installment, and that his failure to so state renders the complaint vulnerable to a general and special demurrer. Since the advances were made on plaintiff's order, he had the means of ascertaining the

dates and amounts of such advances. However, the finance company has full knowledge of these facts. Less particularity is required in the allegations of the complaint where the facts in it stated are such that the defendant, from their nature and his relation to them, has full information concerning them. (*Goldstein* v. *Healey,* 187 Cal. 206 [201 Pac. 462].) Plaintiff was not bound to allege the amounts as stated in the account of the finance company. (*McDermont* v. *Anaheim Union Water Co.,* 124 Cal. 112 [56 Pac. 779].) Ordinarily such a complaint should specifically state the dates and amounts of payments, but where, as here, plaintiff alleges that such facts are unknown to him and calls upon defendant for discovery as to such matters, the complaint is sufficient. (39 Cyc. 1049.)

▇▇▇ To determine usury, interest for the period of the loan and not interest after maturity should be considered. The aggregate of $10,500 for interest, $4,500 for brokerage, and $425 for inspection, appraisal and drawing papers, totaling $15,425, is in excess of lawful interest at twelve per cent on $100,000 for a year by the sum of $3,425. Obviously the excess would be greater, if legal interest should be figured on each installment from date of payment to maturity. On this basis it is alleged the interest amounted to $8,600. The second count therefore states a cause of action against the finance company.

From what has been said, it is apparent that the demurrers of the finance company to the first and second counts, and the demurrer of the individual defendants to the first count, were improperly sustained, and that the demurrers of the loan company to the third and fourth counts, and of the individual defendants to the last three counts, were correctly sustained. The judgment is affirmed as to the loan company and reversed as to the finance company and the individual defendants, with instructions to overrule the demurrer of the finance company as to the first two counts, and the demurrer of the individual defendants as to the first count, with leave to answer.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 1, 1933, and an ap-

plication by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 28, 1933.